

A national public interest law firm defending life, family and religious liberty.

September 15, 2021

University of Colorado Vaccine Verification Team
University of Colorado Anschutz Medical Campus
13001 East 17th Place
Aurora, CO 80045
vaccineverification@cuanschutz.edu
*Sent via email*

Jeremy Hueth
Vice President and University Counsel
1800 Grant Street, Ste. 800
Denver, CO 80203
Jeremy.hueth@cu.edu
*Sent via email*

Kimberly C. Spiering
Senior Associate University Counsel
University of Colorado
Office of University Counsel – Denver
Anschutz Medical Campus
Kimberly.spiering@ucdenver.edu
*Sent via email*

Dear CU Anschutz Exemption Verification Team, Mr. Hueth, and Ms. Spiering:

    My name is Peter Breen, and I am Vice President and Senior Counsel for the Thomas More Society. We are a non-profit, public interest law firm that has defended the rights of individuals and organizations across the country for the past 25 years, including in Colorado. I am writing to you because one of your employees, Dr. ███████████, was recently denied a religious exemption from the Anschutz Medical Campus's ("University's") COVID-19 vaccine mandate ("Mandate") on grounds that are flagrantly illegal.

    Specifically, the University's "Campus Administrative Policy" for "COVID-19 Vaccination Requirement and Compliance" authorizes religious exemptions from the Mandate only for those whose religious "*teachings* are opposed to *all immunizations*." (*See* Exhibit A attached.) (Emphasis added.) The University's policy commits the double error of (1) explicitly *favoring* some religious beliefs over others, and (2) implying that religious beliefs must be tied to organizational teachings in order to be recognized for exemptions. Both of these errors independently violate the First Amendment's requirement that governments remain *neutral* towards religious beliefs and practices, which are furthermore entitled to protection whether or not they are part of any denominational "teachings." They also violate federal Title VII's requirement that employers reasonably accommodate their employees' sincere religious beliefs and practices (of whatever kind) unless (and *only unless*) they pose an "undue hardship" to the employer.

    Therefore, we request that you immediately amend the Campus Administrative Policy's religious exemption to comply with both the First Amendment and Title VII. We also request that you accordingly re-evaluate and grant Dr. ██████'s request for a religious exemption from the University's Mandate. Otherwise, we will not hesitate to file discrimination charges against the University and pursue First Amendment litigation in federal court, where we will seek corresponding attorney's fees.

    Dr. ██████ is a long-time pediatrician employed by the University and works at the University-associated Children's Hospital. Dr. ██████ is a devout Catholic, and in 2018 she obtained a Master's Degree in Bioethics from a combined program with the National Catholic Bioethics Center and the University of Mary. As a result, Dr. ██████ has strongly-held, sincere religious objections to receiving any vaccines that were developed through the use of or testing on cell lines derived from aborted human

CU Anschutz Exemption Verification Team        2        September 15, 2021

children. It is unquestionable that the available COVID-19 vaccines fall into that category,[1] so Dr. ▓▓▓▓'s religious beliefs categorically forbid her from receiving these vaccines.

    Dr. ▓▓▓▓ told the University as much on August 22, 2021, when she responded to its inquiry about the basis of her prior request for a religious exemption from its COVID-19 vaccine mandate by stating the following: "As a faithful Catholic, I uphold the dignity and sanctity of every human life and firmly oppose abortion and the evil involved in the use of cell lines derived from abortions. All 3 available emergent-use authorized vaccines in the U.S. – Moderna, Pfizer-BioNTech, and Johnson & Johnson – used the abortion-derived cell lines (HEK293) in one or more phases of developing the SARS CoV-2 vaccine." (See Dr. ▓▓▓▓'s Statement, attached as Ex. B.) Additionally, in response to the University's inquiry about whether she has "had an influenza or other vaccine in the past," and asking "How does this differ?" Dr. ▓▓▓▓ stated as follows: "I have had other vaccines; including influenza – which does not utilize unethically derived cell lines." (Ex. B.)

    The University responded via an electronically sent letter on August 26, 2021, rejecting Dr. ▓▓▓▓'s request simply "because . . . campus policy . . . only recognizes religious exemptions based on a religious belief whose teachings are opposed to *all* immunizations." (See Ex. C, attached.) (Emphasis added.) The letter then referred Dr. ▓▓▓▓ to the aforementioned Campus Administrative Policy. The letter further instructed that Dr. ▓▓▓▓ would need to provide proof of vaccination by September 1, 2021 or otherwise face "additional actions . . . including but not limited to termination." (Ex. C.) To date Dr. ▓▓▓▓ has not submitted proof of vaccination and has continued to work at Children's Hospital without disruption to her employment status.

    If there is any clear command in our Supreme Court's oft-muddled Free Exercise jurisprudence, it's that "[a]t a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against *some* or all religious beliefs." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) (emphasis added). And "the minimum requirement of neutrality is that a law not discriminate on its face." *Id*. Laws that are not neutral toward religion must survive "the most rigorous of scrutiny," *id*. at 546 (i.e., strict scrutiny), which is possible only if they "advance interests of the highest order and are narrowly tailored to achieve those interests." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021) (cleaned up).

    The Campus Administrative Policy is a paradigmatic example of facial discrimination against *some* religious beliefs. It explicitly singles out those who are religiously opposed to *all* vaccinations and grants them favored treatment, while it categorically rejects requests for religious exemptions by anyone whose religious beliefs design to approve some (even non-abortion-connected) vaccines—including people like Dr. ▓▓▓▓ with unquestionably sincerely held religious beliefs against receiving the COVID-19 vaccines in view of their ties to abortion. Indeed, the only question for government actors like the University here is whether Dr. ▓▓▓▓'s religious beliefs are sincere. But it is almost always impermissible for a non-theocratic government like ours to explicitly discriminate against certain religious beliefs, and a "law that targets religious conduct for distinctive treatment . . . will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546. This is not one of those cases.

    Here, the University can offer "no compelling reason why it has a particular interest in denying an exception [to Dr. ▓▓▓▓] while making them available to others"—i.e., those who are opposed to *all* vaccinations or those for whom COVID-19 vaccines are "medically contraindicated" (See Ex. A, at Sec. C.2.). *Fulton*, 141 S. Ct. at 1882; *see also id*. (holding that the government's requisite "compelling

---

[1] https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/

CU Anschutz Exemption Verification Team            3                    September 15, 2021

interest" must not be "in enforcing its . . . policies generally, but" in *denying a particular claimant a religious exemption*, and that authorizing exemptions from particular policies "undermines the . . . contention that its . . . polices can brook no departures"). Indeed, the fact that Dr. ▮▮▮▮▮ has been allowed to continue serving her patients for two weeks beyond vaccination deadline day undermines the idea that the University has a compelling interest in denying her an exemption.

Further, it almost goes without saying that the University's Mandate applied to Dr. ▮▮▮▮▮ is not the *least restrictive means* where she successfully served as "front-line hero" for the past 18 months while donning PPE in continued service of her patients, and where Dr. ▮▮▮▮▮'s counsel are aware that hospitals and medical schools around the country are currently granting religious exemptions from similar mandates without apparently undermining patient care. *See McCullen v. Coakley*, 573 U.S. 464, 466 (2014) (government must "show[] that it seriously undertook to address [its] various problems with less intrusive tools readily available to it"); *see also Mast v. Fillmore Cnty., Minnesota*, 141 S. Ct. 2430, 2433 (2021) (Gorsuch, J., concurring) (stating that it's "the government's burden to show" that "alternative" treatment of religious activity in other jurisdictions "won't work" in this jurisdiction).

With respect to the University's reference to religious "teachings," the U.S. Supreme Court has plainly held that "we reject the notion that to claim the protection of the Free Exercise Clause, *one must be responding to the commands of a particular religious organization*." *Frazee v. Illinois Dep't of Emp. Sec.,* 489 U.S. 829, 834, 109 S. Ct. 1514, 1517–18, 103 L. Ed. 2d 914 (1989) (emphasis added); *see also Thomas v. Rev. Bd. Of Indiana Emp. Sec. div.*, 450 U.S. 707, 714 (1981) ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.").

Therefore, the University may not imply that Dr. ▮▮▮▮▮ beliefs must be supported by denominational "teachings" without violating the First Amendment.[2]

Finally, Title VII federal employment law plainly forbids employers like the University from engaging in *any* discrimination based on their employees' "religion," which is a term covering *any* sincerely held "religious observance and practice, as well as belief" of an employee, "unless" (*and only unless*) "an employer *demonstrates* that he is unable to reasonably accommodate . . . an employee's religious observance or practice without undue hardship" on the employer's business." 42 U.S.C. §§ 2000e-2(a)(1) & 2000e(j) (emphasis added). In practice, this means Title VII prohibits an employer from discriminating against an employee "in order to avoid accommodating a religious practice that it could accommodate without an undue hardship." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015); *see also id.* ("An employer may not make [an employee's] religious practice, confirmed or otherwise a factor in employment decisions."). Moreover this rule applies even as against an employer's *neutral* polices that *incidentally* burden people's religious beliefs and practices. *See id.* at 775 ("An employer is surely entitled to have, for example, a no-headwear policy as an ordinary matter," but Title VII gives religious practices "favored treatment" and "*requires* otherwise neutral policies to give way to the need for an accommodation") (emphasis added).

---

[2] Still, it's worth noting that Dr. ▮▮▮▮▮'s religious beliefs are squarely consistent with a recent unified statement by the Colorado Catholic Bishops, who declared that a Catholic may "judge it . . . wrong" to receive the available COVID-19 vaccines in part because of the "moral duty to refuse the use of medical products, including certain vaccines, that are created using human cell lines derived from abortion." The Colorado Bishops also stated that such a person's beliefs should "be respected" through "religious exemptions from any and all vaccine mandates." Colo. Bishops Statement, Aug. 6, 2021, https://denvercatholic.org/a-letter-from-the-bishops-of-colorado-on-covid-19-vaccine-mandates/.

CU Anschutz Exemption Verification Team	4	September 15, 2021

      Here, the University has made no attempt to demonstrate that granting Dr. ▮▮▮▮'s request for religious exemption would be an undue hardship (and indeed, that would be a difficult showing in light of the exemptions allowed for *other* religious beliefs and for those who cannot receive the vaccine for reasons of "health," notwithstanding the presumed continued susceptibility of exempted individuals to contracting and spreading COVID-19 and its delta variant). Rather, it has denied Dr. ▮▮▮▮ a religious exemption simply because she is essentially *not religious enough* (or maybe *too* religious). The Campus Administrative Policy fails to provide Dr. ▮▮▮▮'s religious observances the same required "favored treatment" it gives to other religious beliefs and practices. That policy plainly amounts to discrimination against religion, in violation of Title VII.

      Therefore, we reiterate our request that the University rescind its unconstitutional and illegal religious exemption policy and bring it into compliance with the First Amendment and Title VII. We also again request an immediate re-evaluation and grant of Dr. ▮▮▮▮'s request for religious exemption from the University's Mandate. Otherwise we will pursue any and all legal remedies available to Dr. ▮▮▮▮ under the aforesaid law and, of course, seek attorney's fees, which would likely be substantial.

      Please respond to this request by noon this Friday, September 17th. Thank you for your immediate attention.

Very truly yours,

Peter Breen
*Counsel for Dr.* ▮▮▮▮

Enclosures

cc:	Theresa Lynn Sidebotham	Paul M. Jonna	Michael McHale
	Telios Law PLLC	LiMandri & Jonna LLP	Thomas More Society
	19925 Monument Hill Road	P.O. Box 9120	10506 Burt Circle, Suite 110
	Monument, CO 80132 (physical)	Rancho Santa Fe, CA 92067	Omaha, Nebraska 68114
	P.O. Box 3488	Tel: (858) 759-9930	402-501-8586 (direct)
	Monument, CO 80132 (mailing)
	(855) 748-4201