August 26, 2021

To: The School of Medicine, Drs. Brian Dwinnell and Shanta Zimmer

From: ▮▮▮▮▮

Re: Additional request for COVID-19 vaccine exemption

My name is ▮▮▮▮▮ and I am a first-year medical student at the School of Medicine, University of Colorado Denver Anschutz Medical Campus.

The purpose of my letter is to supply additional information on my sincerely held religious belief and practices and to respectfully request a religious exemption for vaccinations. As I will describe below, **the essence of my request relates to the fact that current COVID-19 vaccines were all produced using human fetal cell cultures and, accordingly, were developed by taking a life which violates the fundamental tenets of my long-held Buddhist religion.**

The School of Medicine, University of Colorado Anschutz, is requesting and directing me, a student enrolled in the Medical Doctor program, to get vaccinated with a COVID-19 vaccine. However, I cannot receive a COVID-19 vaccine because to do so violates my sincere and long held religious beliefs and practices as a Buddhist.

My letter will further elaborate my religious beliefs and practices and request the religious exemption for COVID-19 vaccinations. Additional letters will be provided requesting exemptions for other vaccinations, including Hepatitis B and Influenza. Moreover, in this letter, you will find more information on the definition of religion and religious discrimination from the legal perspective and my responses to your initial reply (August 24, 2021 email) to my initial request for exemption. My request is solely based on my sincerely held belief in Buddhism and my relationship with the Buddha, and I would also respectfully invite the school to consider my exemption request solely on the ground of my sincerely held beliefs and practices in Buddhism.

Before elaborating, I would again like to humbly request that this letter be treated with confidentiality and would greatly appreciate a high level of discretion and privacy in handling my request for the religious exemption.

I took my three refuges and five precepts at a Buddhist monastery near my home at a very young age and attended dharma assemblies in China and in the U.S. throughout the past years. These interactions cultivated my Buddhism beliefs and my connection with the Buddha. At my home, I also established a room for an Avalokitesvara Boddhisatva statue and have followed the practice of worshipping, reciting sutras, and performing meditations on a daily basis. As a sincere believer in Buddhism and a follower of the Buddha's teaching, I became a vegan for over a decade and will continue until the end of my life. I have attached a photo of proof of the three refuges and five precepts that I received when I was young and a photo of the Boddhisatva statue at my home.

The currently available COVID-19 vaccines in the U.S. market are either developed from, or tested on, fetal cell lines from aborted babies. Johnson & Johnson required the use of fetal cell cultures, specifically PER.C6, to produce and manufacture its vaccines. Pfizer and Moderna used the fetal cells to characterize the SARS-CoV-2 spike protein and applied such a cell line to test the efficacy of both vaccines. None of the vaccines is completely free from any use of abortion-derived cell lines.

(http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf)

As a sincere Buddhist, I believe that production of vaccines using fetal cells from aborted babies is directly against my belief in the Buddha's doctrine of not-killing and not-harming. The first doctrine from the Five Precepts that I adopted many years ago is to "…refrain from taking life". I believe in not killing any living being in any form,

including humans, animals, and even the small ants or flies. I believe that life should not be destroyed and reject abortion because it involves the deliberate destroying of a life.

The Buddha teaches me that all of "life is one." This phrase means that "…all forms of life are essentially related to one another and share a common essence." I believe that all lives are basically equal, and they only differ in terms of expressions of life and the external forms of beings. The Buddhism teaching also states that "…individual human life begins at conception, and the new being, bearing the karmic identity of a recently deceased individual, is therefore as entitled to the same moral respect as an adult human being." A fundamental principle in Buddhism is the Wheel of Rebirth, in which "…all forms of life will be reincarnated according to the karma they accumulated while living. Someday, in the process of reincarnation when all karma has been completely exhausted, the wheel of rebirth can be stopped," and one will achieve Nirvana. As a result, if a Buddhist wants to reach this Nirvana, he or she must carefully observe the 8-fold Path and the Ten Precepts that help prevent any accumulation of karma. This is because the karma of killing, for example, is very heavy. "If one kills a sentient being, then for 500 lifetimes one will be killed by others," as the Buddha teaches.

The Mahayana Brahajala Sutra explains the first precept in this way: "A disciple of the Buddha shall not himself kill, encourage others to kill, kill by expedient means, praise killing, rejoice at witnessing killing, or kill through incantation or deviant mantras. He must not create the causes, conditions, methods, or karma of killing, and shall not intentionally kill any living creature."

Based on these lessons that I learned from my connection with the Buddha and Buddhism's scriptures, I believe that destroying a baby's life at conception is equal to destroying an individual's life and therefore contrary to my religious beliefs. I also believe that a fetal cell is a living form, and the use of the living form in the production of vaccines is against the teaching of the Buddha, because it praises and encourages killing and violates the First precept of the Buddhist doctrine.

Thus, it is my sincerely held religious belief that, if being vaccinated with any of the currently available vaccines like Pfizer, Moderna, and J&J, I would be cooperating with and complicit in abortion -killing-, and this would result in a strong karma in my life and a violation of the Buddha's teaching—a violation for which I would be held accountable for and be harmed in my ability to achieve Nirvana. Moreover, I am opposed to taking all vaccines that have a connection to abortion or the use of human fetal cells.

For these reasons, I request a religious exemption that will exempt me from having to receive a COVID-19 vaccine. In the meantime, I would also respectfully ask that no adverse action be taken against me on account of my religious beliefs. I recognize that I could be a symptomatic carrier of COVID-19 and, consequently, I am willing, however, to comply with accommodations such as masking and weekly testing to ensure that I am healthy and functional in my daily learning activities and interactions with patients. If exposed or self-identified as COVID-19 positive, I will stay in quarantine and refrain from interacting with others until I am recovered from the illness. Meanwhile, I am also open to future alternative options for vaccinations, if they don't violate my sincerely held belief.

The followings are to clarify legal perspectives on religious belief and respond to the schools' denial letter dated Aug 24th, 2021. Key information is underlined.

1. According to the Title VII of the Civil Rights Act of 1964 and the U.S. Equal Opportunity Employment Commission's guidance on religious discrimination, the definition of religion is broad. Title VII defines "religion" to include "all aspects of religious observance and practice as well as belief," not just practices that are mandated or prohibited by a tenet of the individual's faith. Religion includes not only traditional, organized religions such as Christianity, Judaism, Islam, Hinduism, Sikhism, and Buddhism, but also religious beliefs that are new, uncommon, not part of a formal church or sect, only subscribed to by a small

number of people, or that seem illogical or unreasonable to others.[19]  Further, a person's religious beliefs "need not be confined in either source or content to traditional or parochial concepts of religion." A belief is "religious" for Title VII purposes if it is "religious" in the person's "own scheme of things," i.e., it is a "sincere and meaningful" belief that "occupies a place in the life of its possessor parallel to that filled by . . . God."  The Supreme Court has made it clear that it is not a court's role to determine the reasonableness of an individual's religious beliefs, and that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." An employee's belief, observance, or practice can be "religious" under Title VII even if the employee is affiliated with a religious group that does not espouse or recognize that individual's belief, observance, or practice, or if few – or no – other people adhere to it. Religious beliefs include theistic beliefs as well as non-theistic "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." Religious observances or practices include, for example, attending worship services, praying, wearing religious garb or symbols, displaying religious objects, adhering to certain dietary rules, proselytizing or other forms of religious expression, and refraining from certain activities. Determining whether a practice is religious turns not on the nature of the activity, but on the employee's motivation. (https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#h_959368259682161074864707 6)

A guidance for employers on evaluating religious accommodation requests is as follows. Though it refers to a different state, it is only released on Aug 23rd, and similar legal procedures or professional conducts shall be expected to be released in Colorado.

2. According to the U.S. Equal Opportunity Employment Commission's (EEOC) guidance on religious discrimination, because the definition of religion is broad and protects beliefs, observances, and practices with which the employer may be unfamiliar, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief. If, however, an employee requests religious accommodation, and an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief, observance, or practice, the employer would be justified in seeking additional supporting information.  In determining whether an employee's religious belief is sincerely held, a limited initial inquiry could include objective, general questions, without delving too far into an employee's reasons for a particular belief and without requiring input from an outside source, such as a formal religious leader. Such inquiries might include asking how long the employee has followed the professed belief or what constitutes the basic tenets of the religion. The employer does not have to accept a high-level statement of religious observance that provides no details; an employer can ask about the specific belief, tenet, or observance that conflicts with the vaccination requirement. The template religious accommodation request form includes a question about the conflict presented. Employers should proceed with caution and obtain legal advice before seeking additional supporting information if they have doubts as to the sincerely held religious belief, including third-party verification (e.g., requesting verification from the employee's pastor, rabbi, church elder, etc.). Because the definition of religion is broad and protects beliefs, observances, and practices with which the employer may be unfamiliar, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief.

(https://www.k12.wa.us/sites/default/files/public/communications/2021docs/FAQ-COVID-19-Vaccine-Requirement-for-K-12-School-Employees.pdf)

The Employment Law Landscape reveals the following:

3. Exemption from a Vaccine Mandate Based on Religious Beliefs:

An employee may request, based on a sincerely-held religious belief, <u>to remain unvaccinated, receive only a specific brand of the COVID-19 vaccine, or wait for an alternative version of the vaccine to become available</u>. Employers should process these requests in the same manner as other accommodation requests. "Religion" is defined broadly under Title VII. According to the Guidance, <u>employers should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief, practice, or observance</u>, "unless the employer is aware of facts that provide an objective basis for questioning either the religious nature or the sincerity of a particular belief, practice, or observance," in which case the employer could request additional supporting information.

(https://www.employmentlawlandscape.com/2021/06/eeoc-updates-vaccine-guidance-accommodation-confidentiality-employer-incentives-and-more/)

Also, "Sincerely Held Religious Beliefs Do Not Need to Be Express Tenets of a Religion in Order to Require Accommodation."

4. In religious discrimination cases, employers often believe that the burden is on the employee to prove that the sincerely held religious practice (for example not getting vaccinated) is an express requirement of the employee's religion, and absent proof of such requirement, no accommodation is necessary. However, <u>the definition of sincerely held religious belief is not necessarily tied to express religious requirements</u>.

(https://www.callaborlaw.com/entry/defining-sincerely-held-religious-beliefs-that-might-excuse-mandatory-covid-19-vaccination)

In the meantime, I have consulted with Harry Mihet, Esq., Vice President of Legal Affairs and Chief Litigation Counsel for Liberty Counsel, regarding my sincerely held, religious beliefs. He cited:

5. Supreme Court of the United States: Thomas v. Rev. Bd. of Ind. Emp. Sec. Div., 450 U.S. 707, 714 (1981) "[i]ntrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences . . . and the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. <u>Courts are not arbiters of scriptural interpretation</u>"

6. Supreme Court of the United States: Frazee v. Ill. Dep't of Emp. Sec., 489 U.S. 829, 834 (1989) "Undoubtedly, membership in an organized religious denomination, especially one with a specific tenet forbidding members to work on Sunday, would simplify the problem of identifying sincerely held religious beliefs, but we <u>reject the notion that to claim the protection [for sincerely held religious beliefs], one must be responding to the commands of a particular religious organization</u>."

7. First Amendment of the United States Constitution:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." The First Amendment <u>guarantees freedoms concerning religion, expression, assembly, and the right to petition.</u>  It <u>forbids Congress from both promoting one religion over others and also restricting an individual's religious practices.</u>  It guarantees freedom of expression by prohibiting Congress from restricting the press or the rights of individuals to speak freely.  It also guarantees the right of citizens to assemble peaceably and to petition their government.
(https://www.law.cornell.edu/constitution/first_amendment)

I also consulted KrisAnne Hall, J.D., Chief Counsel, Liberty First Legal, Inc., on my case, and she cited:

8. Under Title VII of the Civil Rights Act of 1964, individuals have the right to be free from discrimination based on religion. Title VII prohibits two categories discrimination. It is unlawful:

   a. "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

   b. (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e—2(a).

The above quotations are for the school's reference on the legal rights of my sincerely-held religious belief. I also have kept and will continue being in touch with the American Civil Liberties Union of Colorado (ACLU), The National Association for the Advancement of Colored People (NAACP), and Marie Miller, J.D. The Institute for Justice, for more legal perspectives of my sincerely-held religious belief.

My religious beliefs are sincerely held for decades. Legally, I cannot be required to prove a church, a monastery or a religious leader agrees with my sincere religious beliefs, my interpretation of the Buddha's scripture, or my instruction from the Buddha. My beliefs are my own, sincerely and deeply held for many years. Below are responses to the school's claims in the email dated Aug 24, 2021, to my initial religious exemption request.

1. From my conversation with the Deans and from the claims laid in the email sent to me by the School of Medicine, it was apparent that my religious beliefs were misconstrued as a personal preference. But the citations and laws discussed above support and recognize the existence of my sincerely held religious beliefs. Moreover, from the point of religion, it is expected that no government, and no employer or school, has the right to inform me what I should believe or that what I believe is not acceptable. My sincerely held religious beliefs are not meant to be judged by others or deemed unacceptable, according to the Constitution. As a result, it is be subject to a violation of law and considered religious discrimination if my sincerely held religious beliefs are judged and not treated respectfully.

2. The School of Medicine's claim that "The University will only accept requests for religious exemption that cite to the official doctrine of an organized religion, in this case, Buddhism, as announced by the leaders of that religion." The doctrines of the Five Precepts were introduced in Buddhist teaching over 2500 years ago and they are widely recognized among Buddhists and leaders. There are certainly rooms of disagreement among groups or individuals under the various forms of Buddhism or any other religion, but disagreements do not necessarily lead to derecognition and disrespect. As underlined in the previous legal section, my sincerely held religious beliefs and practices are not meant to be judged by or necessarily agreed by a particular religious group leader. It is my own sincerely-held religious beliefs and practices of Buddhism and my relationship with the Buddha, which is protected by the law. Clearly, it must be illustrated that the school's claim or request, that all my religious beliefs and practices must be approved by a religious leader in order to be recognized as religious, has the lack of support from the U.S. law on religious freedom and religious discrimination, and therefore has the potential of violating the law in this aspect.

3. The School of Medicine's request to demonstrates that my religion is opposed to all immunizations. It has to be acknowledged that vaccinations or immunizations were a relatively recent invention thanks to the advancement of science and technology. All religions, prior to the first developed vaccines for small pox in the 1700s, have no scriptures about blood or RNA vaccinations or immunizations, because they were

conceived thousands of years ago. Since then, the scriptures or doctrines are subjected to diverse, not necessarily mutually-agreed, interpretations, by a sincerely religious believer like me or others, which serve as guiding principles on one's life.

From the legal perspective, the requirement for an official doctrine explicitly commenting on vaccines has no basis in either Colorado or federal law. In contrast, most of the case law relating to this area of the law suggests that a sincerely held religious belief can be either theistic or a moral and/or ethical belief as to what is right and wrong. Both, however, are acceptable if they are sincerely held. Colorado law, specifically, affirms this principle by explicitly providing that a valid "nonmedical exemption" can be based upon "a religious belief whose teachings are opposed to immunizations or a personal belief that is opposed to immunizations." C.R.S. 25-4-901(1.7). This language almost certainly precludes imposing a requirement of official doctrine documentation. Moreover, religions are defined by the beliefs of its constituents, not uniform statutory constructs. The writings of Buddha predate vaccinations. I recognize that other individuals who practice my religion reach different conclusions about what is/is not permissible. I can only define my religious beliefs. The tenants of my religion, based on my interpretation and practice, preclude me from receiving vaccinations. It is expected that the school's responsibility is to determine whether my beliefs are sincerely held. To require an "official doctrine" discriminates against my religion. I invite the school to acknowledge this point. As I have shared with the school about my sincerely held religious and guiding principles of Buddhism in my life, I humbly ask that the school respects my religious belief and principles that I adopted from Buddhism.

4. The School of Medicine claims or requests that I need to comply with other Buddhis followers at DRBU. The respected Dharma Master Xuan Hua, whose teaching has made an important impact on my sincerely held religious beliefs, have passed away in 1995. He established the City of Ten Thousand Buddha (CTTB) in California in the early 1960s-1980s. CTTB is a Buddhism monastery that not only welcomes Buddhists of all groups or individuals but also other religions including but not limited to Christianity, Judaism, Daoism and others. There is no enforcement from the CTTB that one has to be a particular type of Buddhist in order to enter, live, or practice Buddhism there. CTTB is a monastery where I frequently visited in the past, but it doesn't mean that I would need to follow CTTB's guideline, especially when I am not physically there. It needs to be emphasized that my own sincerely held religious beliefs and practices are not controlled by the CTTB, or any other monastery across the world. Also, my relationship with the Buddha and my sincerely held religious beliefs in Buddhism are not meant to be judged by a third party. On the other hand, DRBU is a registered university in California, which is required by law to follow the public health guidance. It has to be clearly stated that I have no public or private relationship with the DRBU. As a result, the guidelines DRBU is following does not apply to me. It is recommended that the school shall conduct more research on this matter professionally before making any claims. The school's claim on DRBU, enforcing me to follow its guideline, is not grounded and lacks the support of the law.

I invite the university and the school to review its initial claims, to make legal and thorough claims, and to recognized and respect my sincerely held religious belief. It is not my intention to create conflict. As a sincere Buddhist for over decades, I hope the university will value and respect my religious belief, consider my case, and grant me an exemption for the COVID-19 vaccines so that I can continue being a medical student and become a great physician in the future. Thank you for reading this letter and your consideration.

Sincerely,

███

M.D. Candidate, Class of 2025