

A national public interest law firm defending life, family and religious liberty.

September 3, 2021

Jeremy Hueth
Vice President and University Counsel
1800 Grant Street, Suite 800
Denver, CO 80203
Jeremy.hueth@cu.edu
*Sent via email*

Shanta M. Zimmer, MD
Professor of Medicine
Senior Associate Dean for Education
Associate Dean for Diversity and Inclusion
shanta.zimmer@cuanschutz.edu
*Sent via email*

Steve Zweck-Bronner
Anschutz Medical Campus Counsel
Building 500, Room W5150
13001 E. 17th Place
Aurora, CO 80045
Steve.Zweck-Bronner@ucdenver.edu
*Sent via email*

Dear Messrs. Hueth & Zweck-Bronner & Dr. Zimmer:

    My name is Peter Breen, and I am Vice President and Senior Counsel for the Thomas More Society. We are a non-profit, public interest law firm that has defended the rights of individuals and organizations across the country for the past 25 years, including in Colorado. As relevant here, we represent ▮▮▮▮▮▮, a fourth-year medical student at the University of Colorado's School of Medicine ("the University"), after Mr. ▮▮▮▮ was denied a religious exemption from the University's COVID-19 vaccine mandate ("the mandate"). That denial was based on the University's illegitimate reliance on Mr. ▮▮▮▮'s supposed misunderstanding of his own Catholic faith, and despite the fact that an ordained Catholic priest at Mr. ▮▮▮▮'s parish signed Mr. ▮▮▮▮'s exemption form. This is a direct violation of the First Amendment.

    This letter is to request that the University immediately re-evaluate Mr. ▮▮▮▮'s request for a religious accommodation based on *his asserted religious beliefs*, not the University's (flawed) understanding of the teachings of the Catholic Church, before September 7, 2021, the day Mr. ▮▮▮▮ has been instructed to confirm receipt of the first dose of a COVID-19 vaccine.[1] Otherwise, on behalf of Mr. ▮▮▮▮, the Thomas More Society will timely move for a Temporary Restraining Order and Preliminary Injunction in federal court against the University's illegitimate denial of Mr. ▮▮▮▮'s request for religious exemption, and seek corresponding attorneys' fees, costs, and damages as appropriate. A government-run university has no business telling a believer what his personal religious belief should be. And here, the University has grossly misrepresented Catholic teaching on COVID-19 vaccines.

    Mr. ▮▮▮▮ is an exemplary student at the University's medical school. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But when Mr. ▮▮▮▮ submitted a request for religious accommodation from the University's COVID-19 vaccine mandate on September 1, 2021, the University denied his request because Mr. ▮▮▮▮'s beliefs were allegedly "personal," not religious, given the University's flawed evaluation of Catholic Church teaching and its corresponding erroneous conclusion that a Catholic cannot object to COVID-19 vaccines

---

[1] Mr. ▮▮▮▮ has been informed that a "Promotions Committee" will meet on September 15, to decide the sanctions the school will impose on him, because he has exercised his right to a religious exemption.

on religious grounds.

Mr. ▮▮▮▮'s request for religious exemption (*see* **Exhibit A**) relied on several distinct religious objections to the currently available COVID-19 vaccines. Primarily, Mr. ▮▮▮▮ said he objected because the vaccines were "created using aborted human fetuses," in violation of "Catholic teaching maintain[ing] that human life is sacred because we are made in the image of God." (Id.) Indeed, it is inarguable that during the course of their development, the currently available COVID-19 vaccines either used or were tested on abortion-derived human fetal cell lines. *See* https://lozierinstitute.org/update-covid-19-vaccine-candidates-and-abortion-derived-cell-lines/. Mr. ▮▮▮▮ "acknowledged that there is debate within different sects of the Catholic Church regarding this issue as it relates to medical research," but that for *his Catholic beliefs*, receiving a vaccine that relied on abortion-derived fetal cell lines in its development "corroborates the false narrative that no other way might be found by which these advances could occur, distorts our understanding of the sacridity of human life, and implicates those who reap the benefits of this research in that initial, deplorable act, which deprived a human being of his or her right to life." (Id.)

Mr. ▮▮▮▮'s position is consistent with a recent unanimous statement of the Colorado Catholic bishops, who declared that "[t]here is a moral duty to refuse the use of medical products, including certain vaccines, that are created using human cell lines derived from abortion," while noting "it is permissible to use such vaccines *only* under case-specific conditions—if there *are no other alternatives* available and the intent is to preserve life." *A letter from the bishops of Colorado on COVID-19 vaccine mandates*, Colorado Catholic Conference, August 6, 2021, https://denvercatholic.org/a-letter-from-the-bishops-of-colorado-on-covid-19-vaccine-mandates/. The bishops further noted that "[v]accination is not morally obligatory and so must be voluntary." (Id.)

Additionally, Mr. ▮▮▮▮ stated that the currently available COVID-19 vaccines' unique "mechanism of action" never before exercised at a large scale against a disease violates his "Catholic . . . responsibility to make conscientious decisions regarding the use and care of my body," given the lack of current understanding of the vaccines' long-term effects. (Id.) Thus, Mr. ▮▮▮▮ said he believes "the marginal benefit that is offered is not worth the potential risk." (Id.)

Once again, Mr. ▮▮▮▮'s position was consistent with the Colorado Catholic bishops' recent statement, which also declared that "[a] person's assessment of whether the benefits of a medical intervention outweigh the undesirable side-effects are to be respected unless they contradict authoritative Catholic moral teachings." *Colorado Bishops' Letter, supra*. The bishops further stated that "[t]he Catholic Church teaches that a person may refuse a medical intervention, including vaccination, if his or her conscience leads them to that decision." (Id.)[2]

Finally, in response to the University's religious exemption questionnaire, Mr. ▮▮▮▮ stated that although he has received vaccinations in the past (presumably some of which were connected to abortion), he previously "did not hold these firmly held beliefs," and the long-term effects of COVID-19 vaccines are uniquely unknown. (**Exhibit A**.)

In all, Mr. ▮▮▮▮'s request for religious accommodation was consistent with the aforementioned statement of the Colorado bishops, who stated: "Taken as a whole, these points mean a Catholic may

---

[2] Mr. ▮▮▮▮ additionally stated that he sought a religious exemption because of his conscientious objection "to the use of vaccinations as a form of social licensure" in order to participate fully in society, (**Exhibit A**), though this ground was manifestly separate and independent from his other bases of religious objection (id.).

judge it right or wrong to receive certain vaccines for a variety of reasons, and there is no Church law or rule that obligates a Catholic to receive a vaccine – including COVID-19 vaccines." *Colorado Bishops' Letter, supra*.

The University had a different idea. In particular, the University's letter denying Mr. ▇▇▇'s request began by immediately quoting "the Vatican's doctrinal office, the Congregation for the Doctrine of the Faith," which "issued a statement noting it is 'morally acceptable' for Catholics to take vaccines against COVID-19." (Letter, **Exhibit B**.) The University's letter went on to quote statements by the Vatican, the United States Conference of Catholic Bishops, and the aforementioned letter of the Colorado Catholic bishops providing that it *may be* morally acceptable to receive some of the available COVID-19 vaccines. (Id.) The University's letter then manifestly misinterpreted the aforementioned Colorado bishops' statement by declaring that said bishops "reaffirmed in [their] letter dated August 5, 2021 [sic], that use of some COVID-19 vaccines is morally acceptable," (id.), notwithstanding the Colorado bishops' actual statement that individual Catholics may come to the conclusion that receiving abortion-connected COVID vaccines *is not* morally acceptable. *Colorado Bishops' Letter, supra*.

The University's letter then concluded that because Mr. ▇▇▇'s religious objection is "based on [his] belief that the COVID-19 vaccines were developed from human cell lines derived from abortion," his "rationale . . . does not constitute a religious belief, but a personal objection to the development of the vaccine." (Letter, **Exhibit B**.) Although the University's letter stated that its "mandatory vaccination policy offers exemptions to individuals whose religious beliefs are opposed to all vaccinations," it told Mr. ▇▇▇ that "[t]he basis of your objection is of a personal nature and not part of a comprehensive system of religious beliefs," and therefore his request was denied. (Id.)

The University's willingness to provide religious exemptions to the COVID-19 vaccine mandate on some asserted religious grounds, but not others, based on the University's flawed understanding of a religious objector's theology, is a flagrant violation of the First Amendment. The U.S. Supreme Court has plainly held that "we reject the notion that to claim the protection of the Free Exercise Clause, *one must be responding to the commands of a particular religious organization*." *Frazee v. Illinois Dep't of Emp. Sec.,* 489 U.S. 829, 834, 109 S. Ct. 1514, 1517–18, 103 L. Ed. 2d 914 (1989) (emphasis added); *see also Thomas v. Rev. Bd. Of Indiana Emp. Sec. div.*, 450 U.S. 707, 714 (1981) ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."). In other words, the University's denial of Mr. ▇▇▇'s request for religious exemption based on *its understanding* of the institutional Catholic Church's teachings in this regard, and not on Mr. ▇▇▇'s own asserted religious beliefs, was wholly illegitimate and unconstitutional. And unsurprisingly, it was also embarrassingly flawed—the very reason the First Amendment limits government institutions from attempting such inquiries in the first place.

Given the University's willingness to offer religious exemptions for *some* religious reasons, but not others, its vaccine mandate easily fails the test of neutrality required of government toward religion under *Employment Division v. Smith*, 494 U.S. 872 (1990). And in view of the University's willingness to offer exemptions for *various* reasons (including religious and medical), but not for Mr. ▇▇▇'s religious reasons (including on the basis of the vaccines' connection to abortion), the mandate also easily fails the separate and independent test of general applicability under *Smith*. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (stating that a law lacks general applicability when it prohibits religious conduct while allowing other conduct "that undermines the government's asserted interests in a similar way").

Therefore, we request an immediate re-evaluation of Mr. ▇▇▇'s request for religious

accommodation from the University COVID-19 vaccination mandate within the required parameters of the First Amendment. Given the University's admission that it is indeed offering religious exemptions from the mandate, we will continue to closely monitor its evaluation of Mr. ███████'s request. If the University does not engage in such re-revaluation, we will timely pursue Mr. ███████'s remedies in federal court pursuant to 42 U.S.C. § 1983 and seek corresponding attorneys' fees.

Please respond to this request by noon on September 7. In the alternative, if the University needs more time to evaluate our position, and is willing to extend its own deadlines for action against Mr. ███████, please contact me directly. In the meantime, it is our understanding that no adverse action will be taken against Mr. ███████ until at least September 15, 2021. If that is not the case, please let me know immediately. Thank you for your time and attention.

Very truly yours,

Peter Breen
THOMAS MORE SOCIETY
*One of the attorneys for Mr.* ███████

Enclosures

cc:     Theresa Lynn Sidebotham        Paul M. Jonna                  Michael McHale
       Telios Law PLLC                   LiMandri & Jonna LLP        Thomas More Society
       19925 Monument Hill Road       P.O. Box 9120                 10506 Burt Circle, Suite 110
       Monument, CO 80132 (physical)   Rancho Santa Fe, CA 92067   Omaha, Nebraska 68114
       P.O. Box 3488                       Tel: (858) 759-9930          402-501-8586 (direct)
       Monument, CO 80132 (mailing)    *Attorney for Mr.* ███████     *Attorney for Mr.* ███████
       (855) 748-4201
       *Attorney for Mr.* ███████

EXHIBIT A



# Religious Exemption From COVID-19 Vaccination Requirement

All University of Colorado Anschutz Medical Campus students are required to be immunized against COVID-19 prior to their participation in courses in the Fall of 2021, which may be as early as June 1, 2021. However, the University recognizes religious exemptions based upon a religious belief whose teachings are opposed to immunizations. Under that circumstance, the University requires that students submit this religious exemption form.

1. Please explain why your sincerely held religious belief, practice, or observance prevents you from getting a COVID-19 vaccination? Please include a detailed response.

The vaccine was created using aborted human fetuses. Catholic teaching maintains that human life is sacred because we are made in the image of God. It also teaches that life begins at conception, and that abortion is a mortal sin. A mortal sin is the gravest of transgressions within the Catholic faith. I acknowledge that there is debate within different sects of the Catholic Church regarding this issue as it relates to medical research. Some justify research purposes that utilize aborted fetal tissue, using a cost-benefit analysis. They state that the good that can be derived from a broadly applicable medical advancement using what would otherwise be disregarded human tissue is a net positive that justifies the use of these cells for that cause. In response to this, I would argue that use of this tissue corroborates the false narrative that no other way might be found by which these advances could occur, distorts our understanding of the sacridity of human life, and implicates those who reap the benefits of this research in that initial, deplorable act, which deprived a human being of his or her right to life.

As a Catholic, it is also my responsibility to make conscientious decisions regarding the use and care of my body. The vaccines provided against COVID-19 function by a mechanism of action that has not previously been deployed at large scale against disease. It is impossible to understand or to know what the long-term effects of these novel therapeutics will be, and on these grounds, I do not feel that the marginal benefit that is offered is worth the potential risk.

Lastly, vaccination status is being used as leverage against individual liberty by gatekeeping participation in free society. I wish to file this religious exemption, in part, to conscientiously object to the use of vaccinations as a form of social licensure by which conformation to public policy--even public health policy--is unjustly used against the ability of an individual to function and to succeed in their society.

2. Have you had an influenza or other vaccine in the past? How does this differ?

I have. This differs in two substantial ways. The first is personal. I did not hold these firmly held beliefs prior and will be seeking an exemption for the flu shot this year as well. Secondly, the flu shot is not a new treatment modality. It is a vaccine that functions by the same mechanisms as all vaccines have functioned previously. It does not rely on new technology and recent breakthroughs in biochemistry to function. The shot itself, as well as the mechanism by which it works have been tried and tested for decades. This vaccine has not. The long-term effects of the flu vaccine are known. The long-term effects of this vaccine cannot be known without further time.

By signing below, I acknowledge that although a religious exemption from the required COVID-19 vaccination is recognized by CU Anschutz as the student's right, the clinical, lab, practica, and internship sites that partner with CU Anschutz, ███████████████ or rescind a student's clinical placement if that pa███████████████tion or does not allow unvaccinated individuals on their pre███████████████

Student Name:_____████████████████_____

## Statement of Exemption

I am hereby claiming a religious exemption from vaccination against COVID-19 as indicated above.

I attest that the information I have provided on this form is complete and accurate.

I understand that claiming this religious exemption may affect my progression at CU Anschutz as described above.

I also understand that because I am not being vaccinated against COVID-19 I will be required to follow CU Anschutz policies and procedures that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ against COVID-19 during the entire time I am enrolled at CU ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

**REQUIRED** Student Signature: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Date: 09/01/2021

*[signature]*

Fr. Daniel R. Nolan, FSSP

Asst. Pastor, OLMC

Littleton, CO





September 2, 2021

**VIA ELECTRONIC MAIL**

███████████

███████████@cuanschutz.edu

*Re: Request to Consider Vaccine Exemption based on Religious Grounds*

Dear Mr. ██████:

On December 21, 2020, the Vatican's doctrinal office, the Congregation for the Doctrine of the Faith (CDF), issued a statement noting it is "morally acceptable" for Catholics to take vaccines against COVID-19.  Among other things, the CDF stated:

"All vaccinations recognized as clinically safe and effective can be used in good conscience with the certain knowledge that the use of such vaccines does not constitute formal cooperation with the abortion from which the cells used in production of the vaccines derive" … "the morality of vaccination depends not only on the duty to protect one's own health, but also on the duty to pursue the common good."

"In the absence of other means to stop or even prevent the epidemic, the common good may recommend vaccination, especially to protect the weakest and most exposed."

In a [statement released on December 14,](#) 2020, the United States Conference of Catholic Bishops (USCCB) reiterated that, given the urgency of the crisis, "the lack of available alternative vaccines, and the fact that the connection between an abortion that occurred decades ago and receiving a vaccine produced today is remote, inoculation with the new COVID-19 vaccines in these circumstances can be morally justified."

The Colorado Catholic Conference of Bishops reaffirmed in its letter dated August 5, 2021, that use of some COVID-19 vaccines is morally acceptable. The CCC explains that a decision not to receive the COVID-19 Vaccine is a personal decision based on each person's conviction.

The University does not accept personal beliefs as a basis for not complying with its Covid 19 vaccination requirement.

The University adopted its COVID-19 Vaccination Policy for the purpose of protecting the health and safety of the campus community including the patients that pharmacy students treat in University, UC Health, and Children's Hospital clinics. The University determined that a mandatory vaccination requirement for its employees and students is the best way to accomplish this goal.

A recent study by the Centers for Disease Control and Prevention found that individuals who have not been vaccinated were nearly five times more likely to be infected with COVID-19 than

vaccinated people. In addition, the study found that unvaccinated people are about 29 times more likely to be hospitalized with COVID-19 than those who are fully vaccinated. [1]

The University's mandatory vaccination policy offers exemptions to individual's whose religious beliefs are opposed to all vaccinations.  When asked to explain how your religious beliefs prevent you from receiving the COVID-19 vaccine, you responded that you object based on your belief that the COVID-19 vaccines were developed from human cell lines derived from abortion.

The rationale provided does not constitute a religious belief, but a personal objection to the development of the vaccine. The basis for your objection is of a personal nature and not part of a comprehensive system of religious beliefs.

Having considered your exemption request, it is denied.

You must submit verifiable documentation indicating you have received the first COVID-19 vaccine dose to the School's Office of Student Life and submit your verification via the campus portal by September 6, 2021.  You will be allowed to continue attending school between the time you receive your first vaccination and the time you are fully vaccinated (two weeks after you receive the second dose of the Pfizer or Moderna vaccine or the single dose of the J&J vaccine).  For any in-person activities, you will be required to follow campus safety protocols for unvaccinated individuals as set out in University policy, including, but not limited to, weekly testing, masking, and social distancing where possible.

Alternatively, if you do not intend to submit documentation that you have received the first COVID-19 vaccine dose by September 6, 2021, you may request a Leave of Absence from the School or withdraw from the School by September 6, 2021.

Failure to select any of these options will result in referral to the Promotions Committee for further action, up to and including dismissal.

*[signature]*

Shanta M. Zimmer, MD
Professor of Medicine,
Senior Associate Dean for Education,
Associate Dean for Diversity and Inclusion

---

[1] *Morbidity and Mortality Weekly Report*, Centers for Disease Control and Prevention, August 27, 2021.