IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 21–cv–02637–RM–KMT


JANE DOES 1 through 11, and
JOHN DOES 1 through 7,

      Plaintiffs,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO,
TODD SALIMAN, President of the University of Colorado, in his official capacity,
DONALD ELLIMAN, Chancellor of the University of Colorado Anschutz Campus, in his official & personal capacity,
SHANTA ZIMMER, Senior Associate Dean of Medical Education, University of Colorado School of Medicine, in her official & personal capacity,
ERIC MEDIAVILLA, Associate Dean for Student Affairs, University of Colorado School of Dental Medicine, in his official & personal capacity,
ANN-MICHAEL HOLLAND, Master of Science Program Director, Department of Anesthesiology, in her official & personal capacity, and
JOHN & JANE DOES 1, 3-9, members of the Vaccine Verify team, in their official & personal capacities,

      Defendants.

---

## ORDER

---

      This matter is before the court on "Plaintiffs' Motion for Leave to Proceed Anonymously" [Doc. No. 6] filed September 29, 2021.  Defendant Board of Regents of the University of Colorado ("University" or "the University") and Defendants Donald Elliman and Shanta Zimmer filed "Defendants' Opposition to Motion to Proceed Anonymously" [Doc. No. 20] on October 20, 2021, and Plaintiffs filed a Reply on November 3, 2021 [Doc. No. 28].

Between the filing of the Response and the Reply, District Court Judge Raymond P. Moore denied Plaintiffs' first request for a preliminary injunction based on his determination that the issues were moot as a result of the University's policy changes that occurred subsequent to the filing of the Complaint. [Doc. No. 21.] Plaintiffs requested leave to file an Amended Complaint [Doc. No. 30], which was granted. Plaintiffs also filed a Notice of Appeal [Doc. No. 38] objecting to the Court's finding of mootness with respect to the issues presented in the original Complaint.

An interlocutory appeal of the outcome of a preliminary injunction does not divest the district court of jurisdiction to proceed to determine the action on its merits. *Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1229 (10th Cir. 1998) (when an appeal is taken from a limited interlocutory ruling, as opposed to one that affects the litigation as a whole, the district court may proceed with the case). In accord therewith, the parties have been actively briefing Plaintiffs' "Renewed Motion for Preliminary Injunction" [Doc. No. 27] filed November 2, 2021. Therefore, it is appropriate for this court to consider the instant motion.

**LEGAL STANDARDS**

"Proceeding under a pseudonym in federal court is, by all accounts,' an unusual procedure.' " *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000). The court in *Femedeer* observed,

> Moreover, there does not appear to be any specific statute or rule supporting the practice. . . . To the contrary, the Federal Rules of Civil Procedure mandate that all pleadings contain the name of the parties, *see* Fed. R. Civ. P. 10(a), and Rule 17(a) specifically states that '[e]very action shall be prosecuted in the name of the real party in interest.'

*Id.* (quoting Fed. R. Civ. P. 17(a)).  "The public has a common law right to access judicial records and documents in civil cases, but the right is not absolute." *Doe v. FBI*, 218 F.R.D. 256, 258 (D. Colo. 2003).

The Tenth Circuit in *Femedeer* recognized three "exceptional" circumstances in which permitting a party to proceed under a pseudonym is appropriate, including (1) "cases involving matters of a highly sensitive and personal nature," (2) cases involving a "real danger of physical harm," or (3) "where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." *Id.* at 1246; *Doe v. Berkshire Life Ins. Co. of Am.*, No. 20-cv-01033-PAB-NRN, 2020 WL 3429152, at *1 (D. Colo. June 23, 2020).  Both the injury litigated against and also whether or not revelation of a plaintiff's identity may itself visit that very injury are pertinent.  *Id.*

"[I]t is proper to weigh the public interest in determining whether some form of anonymity is warranted." *Id.*  "Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Id.*  Ultimately, the "test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which <u>outweighs</u> the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Roe v. Catholic Health Initiatives Colorado*, No. 11-cv-2179-WYD-KMT, 2012 WL 12840, at *5 (D. Colo., Jan 4, 2012) (emphasis added).

ANALYSIS

### A.    Highly Sensitive Nature of the Case

Plaintiffs' privacy interests are two-fold, involving both health-related or medical issues as well as sincerely held religious beliefs.  Plaintiffs first argue that medical and other privacy issues are woven throughout Plaintiffs' claims, and that their Amended Complaint asserts claims under the Americans with Disabilities Act, 42 U.S.C. 12112(d)(3)(B) and 12112(d)(4)(C) ("ADA"), requiring the Court to take special notice of Plaintiffs' medical privacy rights.  (*See* Am. Compl. [Doc. No. 30].)  Plaintiff asserts that the vaccination status of a person is recognized to be protected, confidential information by an array of federal statutes, including the ADA itself, as well as the Family Educational Rights and Privacy Act, 20 U.S.C. 1232g(b)(2), and the Health Insurance Portability and Privacy Act, 42 U.S.C. 1320d-6 ("HIPPA").

Generally, while revelation of medical conditions might embarrass litigants, a risk of embarrassment damage to plaintiff's professional reputation is insufficient to constitute an exceptional circumstance warranting leave to proceed anonymously.  *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 411 (10th Cir. 2005) ("The risk that a plaintiff may suffer some embarrassment is insufficient to permit anonymity.")  Leave to proceed under a pseudonym will not be granted "when only the plaintiff's economic or professional concerns are involved[.]" *Nat'l Commodity and Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989).  *See also Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1145 (N.D. Cal. 2016) (denying motion to proceed anonymously filed by a plaintiff, a prominent lawyer suffering from an anxiety disorder, because "the potential embarrassment or increased anxiety brought on by litigation does not justify anonymity.").  Even inherently embarrassing mental health issues alone

are found frequently not enough to warrant anonymity.  *See Doe v. Standard Ins. Co.*, 2015 WL 5778566, at *2 (D. Me. Oct. 2, 2015) (quoting *Doe v. Hartford Life and Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) ("[t]he mere fact that a plaintiff alleges a mental health condition, or seeks to recover damages or benefits for a mental health condition, is not dispositive.")).

The fact that Plaintiffs' medical information is protected by federal statute does not alone create an interest which may be considered highly sensitive and personal.  In dealing with anonymity motions, courts have by and large conspicuously ignored this particular argument. *See Doe v. Heitler,* 26 P. 3d 539 (Col. App. 2001); *Doe v. Von Eschenbach*, 2007 WL 1848013 (D.D.C., June 27, 2007); *Doe v.Berkshire Life Insurance Co.*, 2020 WL 3429152.  This court specifically rejects an argument that statutorily-imposed confidentiality protection, in and of itself, satisfies the highly sensitive and personal part of the anonymity argument.  Nonetheless, the court will consider the statutory privacy schemes as part of making its discretionary findings here.

In this case Plaintiffs seek, first and foremost, to enforce their non-medical constitutional rights.  In particular they seek a religious, not medical, exemption to the University's policy regarding mandatory vaccination against COVID-19 and its variants.  The only medical condition common to the Plaintiffs that is pertinent to the case is their unvaccinated status.  It is this status which has caused all Plaintiffs to incur damages related to their employment.

Absent the current political climate, whether a person has been vaccinated or not from various maladies that might befall a human being is not particularly sensitive or personal, even though such information is protected from disclosure under HIPPA as medically related.  Again, absent the current political climate, vaccination protection – or lack thereof – falls largely into

the "none of your business" kind of confidentiality.  Whether one has received a vaccination is not akin to such medical issues as "birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families," which have supported the highly sensitive and personal classification in other cases.  *Doe v. Von Eschenbach,* No. CIV.A.06 2131 RMC, 2007 WL 1848013, at *1 (D.D.C. June 27, 2007).

The court acknowledges that the unvaccinated status of Plaintiffs, which implicates privacy concerns and would otherwise not be fodder for public consumption, will be revealed if Plaintiffs are not granted anonymity.  However, the court finds that, standing alone, a medical condition that is described as unvaccinated against COVID-19 is not so highly sensitive and personal in nature as to overcome the presumption of openness in judicial proceedings.

#### B.    Risk of Physical Harm and Whether the Injury Litigated Against Would Be Incurred as a Result of Revealing Plaintiffs' Identities

Notwithstanding the preceding, however, neither the court nor the litigants undertake litigation in a vacuum; the political climate and public attitudes concerning those who refuse vaccination from COVID-19 actually do exist and must be considered by the court under the balancing required by *Femedeer*.  Plaintiffs argue that if outside persons know they have chosen to be unvaccinated, they are personally subject to a substantial risk of retaliation, including physical harm.  (*See* Am. Compl., ¶¶ 203-211; ¶ 210: online commentator stating about those attending a vaccine-mandate protest: "The anti-vaxers are ignorant trash and don't deserve to live. Gun them down while they're all in one place and let God sort it out"; ¶ 209: President

Biden quoted as saying "We've been patient, but our patience is wearing thin, and the refusal has cost all of us . . . .")[1]

Plaintiffs assert that not only are they potential targets of physical harm from others because of their unvaccinated status, they will also face harm to their professional standing from employers and educational institutions where Plaintiffs may seek employment or admission in the future, particularly in the healthcare field.  Plaintiffs claim "they run the risk of ostracization, threats of harm, immediate firing, and other retaliatory consequences, if their names become known."  (*Id.*, ¶ 206.)  These anticipated damages are not currently part of those claimed in this lawsuit against the named Defendants.  Therefore, in addition to considering whether potential harm to Plaintiffs by exposure of their true identities is a real threat, the court must also determine if "the injury litigated against would be incurred *as a result of* the disclosure of the plaintiff's identity."  *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

Leave to proceed anonymously is not available where the injury of which plaintiff complains in his complaint has already occurred.  *See Doe v. FBI*, 218 F.R.D. at 260; *Doe v. Berkshire Life Ins. Co.*, 2020 WL 3429152, at *3.  *Cf. Doe v. UNUM*, 164 F. Supp. 3d at 1145 (denying motion to proceed anonymously where "[t]he injury litigated against – denial of ERISA benefits – will not occur *as a result of* disclosing Doe's identity" (emphasis added).).  Here, the Plaintiffs have already incurred damages as outlined in the Amended Complaint for their refusal, on religious grounds, to be vaccinated against COVID-19 with any of the currently approved

---

[1] Remarks by President Biden on Fighting the COVID-19 Pandemic, WhiteHouse.gov, Sep. 9, 2021, https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-presidentbiden-on-fighting-the-covid-19-pandemic-3/.

vaccines in violation of the University's policy enforcement at one of the campus locations.[2] However, the damage that is envisioned by Plaintiffs as a result of being <u>publicly</u> exposed as the proponents of this litigation has not occurred.  This is damage that would allegedly come at the hands of as yet unknown future actors, not at the hands of the named Defendants.

 First the court notes that there are no allegations that any of the plaintiffs have received any direct physical threats from anyone.  Plaintiffs' identities are currently known to the Defendants, who received each application for religious exemption from the COVID-19 vaccine mandate and were responsible for turning down the specified religious exemption requests. There is no indication that anyone associated with any defendant, knowing Plaintiffs' identities, has threatened or harmed any plaintiff, other than as alleged in the Amended Complaint.  There is no indication that this lawsuit would identify any plaintiff's home address or other identifying information outside of the fact they are associated with the University's Anschutz campus.[3]

 The harm that Plaintiffs fear if their identification is revealed comes from the public; that very same group that was invoked by President Biden in his lament that "all of us" are hurt by an individual choice to not receive a vaccination.  The same public, of course, has a right to open access to judicial records and documents in civil cases.

 The reality at this stage of the pandemic in the United States is that vaccines are readily available to all adults in this country, free of charge, who want to be vaccinated.  There is no question that there exists in our nation a certain enmity from some persons in society against

---

[2] As outlined in the Amended Complaint, these damages include being placed on unpaid leave and/or loss of employment altogether and being banned from continued educational endeavors.
[3] The parties may obtain a protective order under Fed. R. Civ. P. 26(c) or may seek to restrict certain documents under D.C.COLO.LCivR 7.2 should any filing reveal a plaintiff's address or other personal information.

those persons who choose not to become vaccinated.  Plaintiffs' Motion has presented evidence[4] that supports their contention that choosing not to become vaccinated can stigmatize an individual as uncaring for the well-being of others, especially in light of the many mutations that have been identified thus far and the unknowns surrounding protection through vaccination if the virus is not definitively stopped from spreading.  Arguments on both sides of the vaccine mandate controversy are often vitriolic and personal.

It is not this court's place to attempt to resolve these conflicts, but simply to recognize them and balance the danger posed to individuals being labeled so-called "anti-vaxxers" against legal precedent holding that "[c]ourts are public institutions which exist for the public to serve the public interest [and] . . . that secret court proceedings are anathema to a free society."  *M. M. v. Zavaras*, 939 F. Supp. at 801.

Considering the merit of this litigation, the identity of each of the Plaintiffs is of little-to-no value to the underlying allegations of the complaint.  There has been no argument that the plaintiffs are not sincere in their religious objections to receiving the currently available vaccines.  In fact, the individual plaintiffs who requested a religious exemption from a requirement to receive a COVID-19 vaccine are knowingly placing their own health at risk in order to uphold their religious convictions.  Additionally, as noted previously, the defendants are fully aware of the identities of the plaintiffs, so there is no harm or prejudice to the defendants by keeping the plaintiffs' identities out of the public purview.[5]

---

[4] See examples contained on page 3 of the Motion, which will not be repeated here.
[5] Defendants have not disputed the claim of Plaintiffs that "Plaintiffs' supporting exhibits are not being filed under seal and will be available for the public's review (absent Plaintiffs' names and identifying information, which will be redacted)."

Further, the court agrees with Plaintiffs that there is a uniquely weak public interest in knowing the litigants' identities in this case.  The public will know that a group of people working and/or studying at the University of Colorado Anschutz medical campus have asserted religious objections to receiving the currently available COVID-19 vaccines, generally but not universally, on the basis of the use stem cells derived from aborted fetuses during research. These exemptions were denied by the University, which only allowed religious exemptions for those individuals who are members of organized religions whose teachings entirely forbid vaccinations.  (Am. Compl. ¶3.)  Plaintiffs allege that the disallowance of their requests for religious exemption, and the ultimate penalties that were visited upon them as a result of them being unvaccinated, violated individual constitutional guarantees of religious neutrality and the entanglement between government and religion, as enshrined in the First and Fourteenth Amendments to the U.S. Constitution.

The issues before the Court on the merits, therefore, do not depend on the identities of the Plaintiffs, but rather on the actions of Defendants, who are public, governmental entities and actors.  The public has a very significant interest in the constitutionality of the policies of its public institutions.  But, it is the policy itself and its execution at the University's Anschutz campus that is on trial, not the individual Plaintiffs who are asserting the constitutional violations.

Therefore, applying the balancing criteria set forth in *Roe v. Catholic Health Initiatives Colorado*, No. 2012 WL 12840, at *5, the court finds that the Plaintiffs have a substantial privacy right in protecting against public knowledge of their identities that outweighs the

presumption of openness in judicial proceedings under these limited circumstances and that they should be allowed to proceed via pseudonyms until further order of the court.

Therefore, it is **ORDERED**

"Plaintiff's Motion for Leave to Proceed Anonymously" [Doc. No. 6] is **GRANTED**.

Dated January 5, 2022.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge