**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 21-cv-02637-RM-KMT

JANE DOES 1-11, and
JOHN DOES 1, 3-7,

    Plaintiffs,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO,
TODD SALIMAN, President of the University of Colorado, in his official capacity,
DONALD M. ELLIMAN, Chancellor of the University of Colorado Anschutz Campus, in his official and personal capacities,
SANTA ZIMMER, M.D., Senior Associate Dean of Medical Education, University of Colorado School of Medicine, in her official and personal capacities,
ERIC MEDIAVILLA, Associate Dean for Student Affairs, University of Colorado School of Dental Medicine, in his official and personal capacities,
ANN-MICHAEL HOLLDAND, Master of Science Program Director, Department of Anesthesiology, in her official and personal capacities, and
JOHN AND JANE DOES 1-9, members of the Vaccine Verify team, in their official and personal capacities,

    Defendants.

---

**ORDER**

---

Before the Court is Plaintiffs' Renewed Motion for Preliminary Injunction (ECF No. 27). Defendants have filed a Response to the Renewed Motion (ECF No. 56), and Plaintiffs have filed a Reply (ECF No. 61). The Court denies the Renewed Motion for the reasons below.

**I.    LEGAL STANDARD**

To obtain injunctive relief, a plaintiff must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the

threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted).  Because injunctive relief is an extraordinary remedy, the plaintiff's right to relief must be clear and unequivocal.  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  If the injunction will (1) alter the status quo, (2) mandate action by the defendant, or (3) afford the movant all the relief that he could recover at the conclusion of a full trial on the merits, the movant must meet a heightened burden.  *Id.* at 1259.

## II.     BACKGROUND

Plaintiffs are seventeen current and former employees and students at the University of Colorado's Anschutz Medical Campus alleging that Defendants violated their rights by denying their requests for religious exemptions from the University's Covid-19 vaccine mandate.[1]  They proceed anonymously.  (*See* ECF No. 62.)  The two original Plaintiffs filed their original Verified Complaint on September 29, 2021, challenging the University's September 1 Policy, pursuant to which they were required to either be fully vaccinated against Covid-19 or receive an approved exemption by September 1, 2021.  (*See* ECF No. 1-1 at 2.)  The September 1 Policy provided that "[a] religious exemption may be submitted based on a person's religious belief whose teachings are opposed to all immunizations." (*Id.* at 3.)  The original Plaintiffs filed their Motion for a Temporary Restraining Order and a Preliminary Injunction simultaneously with

---

[1] Plaintiffs now acknowledge that the University has since granted religious accommodations to six employee Plaintiffs who are able to work remotely.  (ECF No. 61 at 16.)

their Verified Complaint but withdrew their request for a temporary restraining order the next day. Briefing on their request for a preliminary injunction proceeded.

Unbeknownst to Plaintiffs when they brought this lawsuit, the September 1 Policy had been superseded by an amended policy, effective September 24, 2021. With respect to religious accommodations, the September 24 Policy provides, in pertinent part, as follows:

> A religious accommodation may be granted based on an employee's religious beliefs. . . . A religious accommodation will not be granted if the accommodation would unduly burden the health and safety of other Individuals, patients, or the campus community.
>
> Religious accommodations are not currently available to students or applicants.

(ECF No. 15-11 at 4.) Nonetheless, Plaintiffs continued to insist they were entitled to an injunction on the September 1 Policy, arguing that "it's because of *that policy* that Dr. Jane Doe remains on indefinite administrative leave with impending termination and Student John Doe has been effectively expelled and cannot return unless he violates his sincerely held religious beliefs." (ECF No. 17 at 6.)

The Court denied Plaintiffs' request for a preliminary injunction enjoining enforcement of the September 1 Policy on mootness grounds, citing the absence of any evidence that policy might be reinstated. (*See* ECF No. 21 at 2-3.) The Court denied a preliminary injunction with respect to the September 24 Policy because the operative Verified Complaint did not state any claim premised on that policy. (*Id.* at 3.)

Plaintiffs then filed their Renewed Motion, seeking an order enjoining Defendants from enforcing either the September 1 or September 24 Policies and ordering them to grant Plaintiffs' religious exemptions and to revoke the prior denials of their requests. Plaintiffs' Verified Amended and Supplemental Complaint added sixteen new Plaintiffs to the case as well as some

new Defendants. Plaintiff John Doe 2 has since voluntarily dismissed his claims without prejudice (ECF No. 34), leaving seventeen Plaintiffs at present: thirteen current or former employees (including medical providers, one of whom was an original Plaintiff and is an intensive care pediatrician) and four current or former students. Plaintiffs assert that Defendants' refusal to grant them religious exemptions violates of the Free Exercise and Establishment Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), and the religious freedom clauses of the Colorado constitution. (*See* ECF No. 30 at 73-82.) With respect to the six employee Plaintiffs who have been granted religious accommodations, Plaintiffs assert that their claims are not moot because "they have not been granted *equal treatment* with similarly situated employees exempted for non-religious reasons, in accord with the First Amendment's requirement of *equal treatment* for religious believers." (ECF No. 61 at 9.)

In their Response to the Renewed Motion, Defendants assert that they reconsidered each of the current employees Plaintiffs' requests for religious accommodation under the September 24 Policy. (ECF No. 56 at 9.) Defendants did not reconsider the requests by Jane Does 2 and 9, who had since resigned and been terminated, respectively. The record contains letters from December 2021 to each of the remaining employee Plaintiffs explaining how their exemption requests were evaluated under the September 24 Policy. The letters show that accommodations were approved for six employees (Jane Does 4 and 6 and John Does 3-5, 7) because they could perform their job duties remotely. For those whose job duties could not be performed remotely, the letters informed the unvaccinated employee Plaintiffs that their interaction with patients, fellow faculty, and staff members would place those individuals' health

and safety at risk. (*See, e.g.*, ECF No. 56-4.) The letters further explained that transferring those employees' job duties to other individuals "presents undue hardship to the University." (*Id.*) As a result, Jane Does 1 and 11 were placed on paid leave (ECF Nos. 56-3, 56-9), Jane Doe 3 was placed on unpaid leave (ECF No. 56-4), Jane Doe 5 was permitted to work remotely on a temporary basis (ECF No. 56-6), and Jane Doe 10 was informed she would be placed on unpaid leave for an additional thirty days after her previously approved parental leave ended, after which she would be terminated (ECF No. 56-8). Defendants did not reconsider the student Plaintiffs' requests for religious exemptions because they are ineligible for religious accommodations under the September 24 Policy.

### III.   ANALYSIS

In the Renewed Motion, Plaintiffs seek a preliminary injunction preventing Defendants from enforcing their Covid-19 vaccine mandate "in any manner that violates Plaintiffs' rights under the First and Fourteenth Amendments." (ECF No. 27 at 1.) The Court begins its analysis by noting that Plaintiffs seek a disfavored injunction that would alter the status quo and mandate action by Defendants, and therefore they have an especially high burden to meet. *See Schrier*, 427 F.3d at 1259.

Next, the Court finds Plaintiffs have not shown they are entitled to injunctive relief in connection with the September 1 Policy. Plaintiffs appear to concede that the September 24 Policy amended and superseded the prior policy; nevertheless, they contend that such amendment "did not moot the original harm inflicted by" the September 1 Policy. (ECF No. 61 at 7.) Even if that is so, there is no argument or evidence that the September 1 Policy continues to be in effect or is likely to be reinstated. With the case in its current posture, the Court finds

that enjoining Defendants from enforcing the September 1 Policy would have no effect in the real world.  *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1112 (10th Cir. 2010) (concluding that superseding biological opinion mooted environmental groups' prayer for injunctive and declaratory relief based on earlier opinions).  Because Plaintiffs have not established that enjoining Defendants from enforcing the September 1 Policy is necessary to prevent irreparable harm to them, the Court turns to weighing the injunction factors to determine whether Plaintiffs are entitled to injunctive relief in connection with the September 24 Policy.

      A.      **Likelihood of Success on the Merits**

The Constitution permits general regulations that incidentally burden religious practices. *See Emp. Div. v. Smith*, 494 U.S. 872, 879 (1990).  "[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."  *Id.* (quotation omitted).  Accordingly, "a neutral law of general applicability is subject to rational basis review even if it incidentally burdens a particular religious practice." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021) (quotation omitted).

Plaintiffs have not argued that the September 24 Policy is not rational, and, in accord with other federal courts that have reached the issue, this Court has no trouble finding that it is. *See, e.g.*, *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021) ("Appellants do not argue that they are likely to succeed on the merits of their free exercise claim if rational basis review applies."); *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) ("The Vaccine Mandate plainly satisfies this [rational basis] standard."); *We The Patriots*, 17 F.4th at 290 ("This was a reasonable exercise of the State's power to enact rules to protect the public health.");

*Does 1-6 v. Mills*, 16 F.4th 20, 32 (1st Cir. 2021) ("Strict scrutiny does not apply here.  But even if it did, the plaintiffs still have no likelihood of success."); *Klaassen v. Trs. of Ind. Univ.*, --- F. Supp. 3d ----, 2021 WL 3073926, at *38 (N.D. Ind. July 18, 2021) ("No student, including those not yet exempt, ha[s] shown that Indiana University's vaccine mandate as applied to them violates rational basis review.").  Thus, to establish they are entitled to a preliminary injunction based on their constitutional claims, Plaintiffs must show they are likely to succeed in establishing that the September 24 Policy is not neutral and generally applicable. *See Smith*, 494 U.S. at 879.  Were they able to do so, the Court would have had to consider whether the September 24 Policy can satisfy strict scrutiny—that is, whether it is narrowly tailored to achieve a compelling governmental interest.  *See Kane*, 19 F.4th at 169.  The Court does not reach that issue, however, because Plaintiffs fail to meet their initial burden.

        1.      <u>Neutrality</u>

First, the September 24 Policy is neutral on its face.  It applies to anyone who works or learns on the Anschutz Medical Campus or off campus in connection with CU Anschutz programs "who currently or may in the future access any CU Anschutz facility or participate in any CU Anschutz program, or whose employment or academic activities may require in-person interaction with other CU Anschutz employees, students, patients, study subjects, or members of the public, regardless of location."  (ECF No. 15-11 at 1.)  The policy is not intolerant of any religious beliefs, nor does it restrict any practices because of their religious nature.  *See Fulton v. City of Philadelphia*, --- U.S. ----, 141 S. Ct. 1868, 1877 (2021).

Second, the Court finds the September 24 Policy is neutral as applied to Plaintiffs. "[C]ourts have consistently held that schools that provided a religious exemption from

mandatory vaccination requirements did so *above and beyond* that mandated by that Constitution." *Klaassen*, 2021 WL 3073926, at *39. Allowing employees, but not students, to request religious accommodations treats employees and students differently, but it does not single out religion or religious practices. *See Mills*, 16 F.4th at 29. Plaintiffs have not shown a likelihood of establishing that Defendants implemented the September 24 Policy "with the aim of suppressing religious belief, rather than protecting the health and safety of students, staff, and the community." *Doe*, 19 F.4th at 1177. Contrary to what Plaintiffs imply, the fact that the University amended its policy while navigating a monthslong global pandemic does not show that its reasons for denying religious exemptions for students are pretextual.

Plaintiffs' reliance on *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021), for the proposition that if Defendants provide a religious exemption for employees, it must also do so for students, is misplaced. In *Tandon*, which addresses exceptions to restrictions on private gatherings for comparable secular and religious activities, the United States Supreme Court held that "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Id.* But the Court does not see how offering employees the opportunity to request a religious accommodation could amount to treating comparable secular activity more favorably than religious exercise. For one thing, Plaintiffs have not shown that employees and students are comparable in this context. "Comparability is concerned with the risks various activities pose." *Tandon*, 141 S. Ct. at 1296. If students outnumber employees at CU Anschutz, granting religious exemptions for them could significantly undermine the University's goal of protecting the health and safety of patients, faculty, and staff. *See Doe*,

8

19 F.4th at 1178 ("[I]f that number [of students who have sought or are likely to seek a medical exemption] is very small and the number of students likely to seek a religious exemption is large, then the medical exemption would not qualify as 'comparable' to the religious exemption in terms of the 'risk' each exemption poses to the government's asserted interests."). Moreover, although the University has determined it can accommodate some employees by allowing them to work remotely, Plaintiffs have made no showing that a similar accommodation for students is practicable.[2] And, as Defendants explain in their Response, the September 24 Policy treats employees and students differently because of Title VII of the Civil Rights Act of 1964, which protects the former but not the latter. *See id.* at 1180 (finding that school district's inclusion of a legally required religious accommodation procedure for employees did not render student vaccine mandate not generally applicable).

Under these circumstances, and on the current record, the Court finds Plaintiffs are not likely to succeed in their attempts to establish that the September 24 Policy is not neutral, either on its face or as applied to Plaintiffs.[3]

### 2. General Applicability

Nor have Plaintiffs shown they are likely to succeed in establishing that the September 24 Policy is not generally applicable. "To be generally applicable, a law may not selectively burden religiously motivated conduct while exempting comparable secularly motivated conduct." *Mills*,

---

[2] This is, after all, a medical campus, as opposed to other types of educational settings that might be able to provide learning opportunities remotely that are comparable to in-person learning.

[3] Plaintiffs also assert at various points in their briefing that employees and students are granted religious exemptions more readily on campuses other than on the Anschutz Medical Campus. (*See, e.g.*, ECF No. 27 at 17-18.) But these underdeveloped assertions do not provide a basis for finding that the September 24 Policy, which applies solely to the Anschutz Medical Campus, is not neutral or generally applicable as to Plaintiffs, particularly in the context of seeking a preliminary injunction, which requires Plaintiffs to establish a clear and unequivocal right to relief. *See Schrier*, 427 F.3d at 1258.

16 F.4th at 29.  A law may not be generally applicable if it (1) "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" or (2) "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way."  *Fulton*, 141 S. Ct. at 1877 (quotation omitted).  However, "an exemption is not individualized simply because it contains express exceptions for objectively defined categories of persons."  *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021) (quotation omitted).  And "the mere existence of an exemption procedure, absent any showing that secularly motivated conduct could be impermissibly favored over religiously motivated conduct, is not enough to render a law not generally applicable."  *We The Patriots*, 17 F.4th at 288-89.

        Plaintiffs argue that the September 24 Policy, which allows medical accommodations for both employees and students, provides a mechanism for individualized exemptions.  But courts considering similar exemptions have rejected this argument.  In *We The Patriots*, the court found the medical exemption at issue did not create a mechanism for individualized exemptions because it provided "an objectively defined category of people to whom the vaccine requirement does not apply."  *Id.* at 289; *see also id.* ("That physicians and nurse practitioners must use their medical judgment to determine whether a particular individual has a contraindication or precaution against receiving the vaccine does not render the exemption discretionary.").  And in *Doe*, the court found that while it may be feasible to manage the Covid-19 risks posed by a small set of objectively defined and largely time-limited medical exemption, allowing a much greater number of permanent religious exemptions could pose a significant barrier to effective disease prevention.  19 F.4th at 1178.  That scenario is consistent with the circumstances of this case,

where Defendants have adduced evidence that they have received more than twice as many requests for religious exemptions as they have for medical exemptions. (ECF No. 56 at 8.) The Court agrees with the reasoning in *We The Patriots* and *Doe* and finds that the medical exemption in the September 24 Policy does not render the policy not generally applicable.

Plaintiffs also argue that the September 24 Policy prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way, alleging that "medical exemptees are allowed to work and study with minimal restrictions, whether with and around patient, other staff and students, or members of the public. But those with sincere religious objections are to be fired and expelled, and at least entirely forbidden from in-person contact with anyone affiliated with the Anschutz campus." (ECF No. 30 at 23, ¶ 65.) In support of this argument, Plaintiffs cite a single example of a fourth-year medical student who was allowed to participate in medical rounds after receiving a medical exemption. (*See* ECF No. 3-1 at 3, ¶ 9.) Defendants apparently concede this allegation for present purposes, asserting this was done in error, that the error has since been corrected, and that at present, "[u]nvaccinated employees and students are not permitted to work in facilities with immunocompromised patients." (ECF No. 56 at 30.) Defendants also assert that under the September 24 Policy, the review processes for medical and religious accommodations use the same standard. (ECF No. 56-17 at 2, ¶ 9.) Indeed, some Plaintiffs, too, were allowed to continue working past the September 1 vaccination deadline, at least temporarily. (*See* ECF No. 30 at 26-27, ¶¶ 74, 185.) The current record leaves the Court with the impression that although the University has made adjustments to its response to the Covid-19 pandemic, it has now settled on enforcing the vaccine mandate pursuant to the September 24 Policy, which is

11

generally applicable. Although Plaintiffs may adduce additional evidence that such is not the case, at this stage the Court finds they are not likely to succeed in establishing that the policy is not generally applicable.

### B. Irreparable Harm

"When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (quotation omitted). Plaintiffs have failed to demonstrate a likelihood of success on their constitutional claims, and the Court finds their asserted harm is not of a constitutional dimension. Plaintiffs' alleged harm based on loss of employment and professional standing or delays and is the type of harm that is typically compensable with money damages. *See We The Patriots*, 17 F.4th at 294. Accordingly, Plaintiffs' request for a preliminary injunction is denied for the additional reason that they have not shown they will be irreparably harmed if the Court does not enjoin Defendants from enforcing the September 24 Policy.

### C. Balance of Harms and Public Interest

The balance of the harms and public interest factors merge when the government is a party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court finds Plaintiffs have failed to demonstrate that the public interest weighs in favor of enjoining enforcement of the September 24 Policy. Defendants have a compelling interest in ensuring that employees and students associated with Colorado's preeminent medical campus are vaccinated against Covid-19—for their patients' health and safety as well as their own. It is simply not the case that a medical campus is required to put patients and others in a healthcare environment at risk to accommodate these Plaintiffs. And during this pandemic, which has placed unprecedented

burdens on healthcare workers, the Court finds the public interest is not served by adding to that burden additional uncertainty about colleagues' vaccination status.

## IV. CONCLUSION

Therefore, the Court finds Plaintiffs have not shown a clear and unequivocal right to injunctive relief—much less met the high bar for a disfavored injunction—and DENIES the Renewed Motion (ECF No. 27).

DATED this 27th day of January, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge