**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02637-RM-KMT

JANE DOES 1 through 11, and JOHN DOES 1, 3 through 7,

     Plaintiffs,

v.

BOARD OF REGENTS of the UNIVERSITY OF COLORADO, et al.,

     Defendants.

---

**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

---

     Defendants the Board of Regents of the University of Colorado, Todd Saliman, Donald Elliman, Shanta Zimmer, Eric Mediavilla, and Ann-Michael Holland[1] (together, "Defendants"), respectfully submit this Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 30) for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[2]

**INTRODUCTION**

     The University of Colorado Anschutz Medical Campus (the "University" or "Anschutz Medical Campus") is one of the nation's leading medical facilities. The Anschutz Medical Campus serves the most vulnerable members of our community. This includes acutely ill children, many of whom are too young to be vaccinated against COVID-19, and other sick and

---

[1] The Board of Regents and Saliman are sued in their official capacities only. Elliman, Zimmer, Mediavilla, and Holland are sued in both their official and individual capacities. *See* Am. Compl., ECF No. 30.

[2] **Certificate of Conferral:** In accordance with the Court's practice standards, undersigned counsel conferred with counsel for Plaintiffs as to this Motion under Rule 12(b)(1) and 12(b)(6), and Plaintiffs' counsel stated that they oppose the relief requested herein.

injured people who are especially vulnerable to COVID-19. COVID-19 is an infectious disease caused by SARS-CoV-2, which spreads primarily through respiratory droplets and very small particles that contain the virus. Those who contract the disease may suffer severe illness or death, or incur long-term, ongoing health problems. Anyone who contracts COVID-19 may transmit the disease to others. There are currently three COVID-19 vaccines available in Colorado, which have been proven safe and effective at combatting the disease.

To protect the University's employees, students, and patients, beginning in September 2021, the University required its employees and students to be fully vaccinated against COVID-19. Although the University originally adopted a vaccination policy on September 1, 2021 (the "September 1 Policy"), it repealed and replaced that policy three weeks later with a new policy effective September 24, 2021 (the "Amended Policy"). Under the Amended Policy, both employees and students may apply for medical exemptions, and employees may apply for religious exemptions. The current Plaintiffs, a group of seventeen employees or students at the University, all sought to avoid the vaccination requirement on religious grounds. After some (but not all) of the plaintiffs were denied an exemption, they sued the University, alleging a variety of claims—which have been considered and rejected by federal and state courts in other cases across the country—and seeking injunctive and monetary relief.

Defendants now seek to dismiss the Amended Complaint for three reasons. *First*, in light of the Amended Policy, most of Plaintiffs' factual allegations and several of their claims are moot, thus eliminating this Court's subject matter jurisdiction over those claims. *Second*, the Court lacks subject matter jurisdiction over several claims under various doctrines of governmental immunity. *Third*, construing the allegations in the light most favorable to Plaintiffs, Plaintiffs have failed to state a claim upon which relief can be granted.

**SUMMARY OF KEY ALLEGATIONS**

**I.      The September 1 Policy**

After significant research and consultation, the Anschutz Medical Campus enacted the

September 1 Policy requiring all its students and employees to be vaccinated against COVID-19.

Ex. 1, Elliman Decl. ¶ 9.[3] The policy included medical and religious exemptions for both

employees and staff. Sept. 1 Policy, Ex. 1 to Am. Compl., at 3. The University repealed the

September 1 Policy and replaced it with the Amended Policy effective September 24, 2021. Am.

Compl. ¶ 61; Ex. 1, Elliman Decl. ¶ 10.

**II.     The Amended Policy**

The Amended Policy, like the September 1 Policy, makes vaccination mandatory for all

Anschutz Medical Center employees and students. Amended Policy, Ex. 28 to Am. Compl., at 1.

Both employees and students are eligible for medical exemptions under the Amended Policy, but

only employees may apply for religious exemptions. *Id.* at 4.

The Amended Policy clarifies that even if an employee or student demonstrates eligibility

for a medical exemption by providing a "medical exemption form" signed by a qualified

healthcare provider stating that "vaccination is absolutely contraindicated [for the individual] due

to other medical conditions," "[a] medical accommodation will not be granted, if the

accommodation poses an undue hardship or the accommodation poses a direct threat to the

health or safety of the Individual or others." *Id.* at 3–4. Similarly, an employee who establishes

---

[3] These additional materials are submitted only in support of Defendant's Rule 12(b)(1) motion.
*See, e.g.*, *Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) ("When a party
challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to
allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed
jurisdictional facts.'") (quotation omitted). As such, and in accordance with the Court's practice
standards, this Motion should not be converted into one under Rule 56.

eligibility for a religious exemption by "submit[ting] their religious accommodation request form" will not receive the exemption "if the accommodation would unduly burden the health and safety of other Individuals, patients, or the campus community." *Id.* at 4. Further, students and employees who are granted either kind of exemption are "required to adhere to additional safety protocols [on campus], including, but not limited to wearing masks, social distancing, staying home when sick, quarantining in accordance with current Centers for Disease Control ('CDC') guidance, submitting daily attestations, and undergoing frequent asymptomatic testing." *Id.*

Plaintiffs filed the Amended Complaint after the University issued the Amended Policy but before the University had an opportunity to re-evaluate Plaintiffs' requests for religious exemptions under the Amended Policy. *See* Am. Compl. ¶ 62.

### III.   Plaintiffs' Current Employment And Accommodation Statuses

This case involves 17 different Plaintiffs—Jane Does 1 through 11 and John Does 1 through 7—who are current or former employees and students of the Anschutz Medical Campus.[4] All have religious objections to the COVID-19 vaccines and were denied religious exemptions under the September 1 Policy. *See* Am. Compl. ¶¶ 13, 14, 16–33. But the claims of some of the Plaintiffs, listed below, are now moot because they have either (1) received religious exemptions, (2) chosen to get vaccinated, or (3) voluntarily left the University:

**Jane Doe 2** was a pediatric anesthesiologist and Associate Professor of Clinical Practice at Children's Hospital Colorado at the Anschutz Medical Campus. Am. Compl. ¶ 17. The University denied her request for a religious exemption under the September 1 Policy. Jane Doe 2 resigned before the Amended Policy was put in place. *Id.* ¶ 79.

**Jane Doe 4** is an instructor in multisystemic therapy at the Kempe Center at the Anschutz

---

[4] John Doe 2 voluntarily dismissed his claims. ECF No. 35.

Medical Campus. Am. Compl. ¶ 19. The University denied her request for a religious exemption under the September 1 Policy but permitted her to work fully remotely. *Id.* The University later reevaluated Jane Doe 4's request under the Amended Policy and granted her an exemption on the basis that her position "has always been designated a 100 percent remote position that currently does not require in-person interaction." Ex. 2, Dec. 9, 2021 Letter re: Jane Doe 4.

**Jane Doe 5** is a program coordinator in an ambulatory surgical center that is affiliated with the Anschutz School of Medicine. Am. Compl. ¶ 20. The University denied her request for a religious exemption under the September 1 Policy but permitted her to temporarily work fully remotely. *Id.* The University later reevaluated Jane Doe 5's request under the Amended Policy and again denied her request because her position "cannot be performed 100% remotely without job modifications that would present an undue hardship to the University." Ex. 3, Dec. 10, 2021 Letter re: Jane Doe 5. The University has nonetheless permitted Jane Doe 5 "to work remotely on a temporary basis subject to further review" but has decreased her compensation by 10 percent because she is unable to perform all of her job responsibilities remotely. *Id.*; Am. Compl. ¶ 20.

**Jane Doe 6** is a program manager in the Office of the Dean of the School of Medicine. Am. Compl. ¶ 21. The University denied her request for a religious exemption under the September 1 Policy but permitted her to work fully remotely. *Id.* The University reevaluated Jane Doe 6's request under the Amended Policy and determined that because her job duties "do not require in-person interaction with any member of the University community or patients, the University can accommodate [her] request by allowing [Jane Doe 6] to work 100 percent remotely." Ex. 4, Dec. 9, 2021 Letter re: Jane Doe 6.

**Jane Doe 7** is a fourth-year student at the Anschutz School of Dental Medicine. Am.

Compl. ¶ 22. The University denied her request for a religious exemption under the September 1 Policy. *Id.* Jane Doe 7 then contracted COVID-19 in early September 2021. *Id.* Because Jane Doe 7's doctor advised her to wait until 90 days after her illness to get vaccinated against COVID-19, the University placed her on medical leave for that 90-day period, which ended on December 15, 2021. *Id.* Jane Doe 7 subsequently obtained her COVID-19 vaccine. Ex. 9, Email from Jane Doe 7.

**John Doe 3** is a senior data integration engineer employed by the Anschutz Medical Campus's Office of Information Technology. Am. Compl. ¶ 29. The University denied his request for a religious exemption under the September 1 Policy but permitted him to work fully remotely. *Id.* After reevaluating John Doe 3's request under the Amended Policy, the University granted it, explaining that the University could "accommodate [his] request by allowing [him] to work 100 percent remotely" because his duties "do not require in-person interaction." Ex. 5, Dec. 9, 2021 Letter re: John Doe 3.

**John Doe 4** is a police communications supervisor for the Anschutz Medical Campus Police. Am. Compl. ¶ 30. The University denied his request for a religious exemption under the September 1 Policy but permitted him to work in person with certain restrictions because he is an essential employee. *Id.* His compensation was reduced by 10 percent. *Id.* The University reevaluated John Doe 4's request under the Amended Policy and confirmed that because he was an "essential employee whose job duties cannot be performed remotely" due to "need[ed] access to the technology required to log and track calls, monitor alarms and dispatch units as needed," it would accommodate his request and permit him to work in-person so long as he follows certain restrictions and communicates with other employees only remotely. Ex. 6, Dec. 10, 2021 Letter re: John Doe 4. Since then, the University reversed John Doe 4's 10-percent salary reduction and

issued him backpay for the months when the salary reduction was in effect.

**John Doe 5** is a senior network engineer for the Anschutz Medical Campus's Office of Information Technology. Am. Compl. ¶ 31. The University denied his request for a religious exemption under the September 1 Policy but permitted him to work fully remotely. *Id.* The University reevaluated his request under the Amended Policy and confirmed that it could accommodate John Doe 5's request by permitting him "to work 100 percent remotely." Ex. 7, Dec. 9, 2021 Letter re: John Doe 5.

**John Doe 6** was a first-year student in the School of Medicine's anesthesiology master's program. Am. Compl. ¶ 32. The University denied his request for a religious exemption under the September 1 Policy, explaining that even if John Doe 6 was eligible for an exemption "accommodation would not be possible because of the undue burden it would cause to the Program's ability to provide safe patient care." Aug. 30, 2021 Letter re: John Doe 6, Ex. 26 to Am. Compl. He withdrew from the master's program shortly thereafter. Am. Compl. ¶ 170.

**John Doe 7** is an identity management developer in the Anschutz Medical Campus's Office of Information Technology. Am. Compl. ¶ 33. The University denied his request for a religious exemption under the September 1 Policy but permitted him to work fully remotely. *Id.* The University reevaluated John Doe 7's request for a religious exemption under the Amended Policy and confirmed that it could "accommodate [his] request by allowing [him] to work 100 percent remotely" because his job responsibilities "do not require in-person interaction." Ex. 8, Dec. 9, 2021 Letter re: John Doe 7.

## LEGAL STANDARD

Motions to dismiss for lack of subject matter jurisdiction take two forms, namely, (1) "a facial attack on the complaint's allegations as to subject matter jurisdiction," or (2) a motion that

"go[es] beyond allegations contained in the complaint." *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). In evaluating the latter type of challenge—which Defendants raise here—"a district court may not presume the truthfulness of the complaint's factual allegations" and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.* at 1003.

By contrast, to satisfy Rule 12(b)(6), "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Tatten v. Bank of Am. Corp.*, 562 F. App'x 718, 720 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation omitted). As the Court is aware, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

**I.    Several of Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because they are moot.**

Mootness is "the doctrine of standing set in a time frame." *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quotation omitted). An "actual controversy" must exist "at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quotation omitted). A case becomes moot when a change in the circumstances makes it "impossible for the court to grant any effectual relief whatsoever to a prevailing party." *Denver Bible Church v. Polis*, 2022 U.S. App. LEXIS 1994, at *7 (10th Cir. Jan. 24, 2022) (quotation omitted).

This Court lacks subject matter jurisdiction over portions of this dispute because they are

moot. *First*, six Plaintiffs—Jane Does 4 and 6, and John Does 3, 4, 5, and 7—have already received the religious accommodations that they requested from the University, and Jane Doe 7 has chosen to get vaccinated. *Second*, two Plaintiffs—Jane Doe 2 and John Doe 6—are no longer employees of or students at the University. *Third*, because the University has withdrawn the September 1 Policy and replaced it with the Amended Policy, all claims arising from the September 1 Policy should be dismissed as moot insofar as they seek equitable relief.

### A. Jane Does 4 and 6's and John Does 3, 4, 5, and 7's claims for equitable relief are moot because these Plaintiffs already received the requested religious exemptions and Jane Doe 7 received the vaccine.

A plaintiff seeking injunctive relief must establish "a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law" to demonstrate "an adequate basis for equitable relief." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)). Similarly, a plaintiff requesting declaratory relief "must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Id.* at 1025.

In early December, the University sent Jane Does 4 and 6 and John Does 3, 5, and 7 letters explaining that it had reevaluated their requests for religious exemptions under the Amended Policy and decided to grant them religious accommodations by permitting them to work "100 percent remotely" because doing so would not cause the University undue hardship. *See* Ex. Nos. 2, 4, 5, 7, 8. The University sent John Doe 4 a similar letter granting him a religious exemption and explaining that although John Doe 4 is "an essential employee whose job duties cannot be performed remotely," the University would allow him to continue working in person so long as he followed certain protocols aimed at protecting the health and safety of those around him. *See* Ex. 6. Around the same time, Jane Doe 7 received the COVID-19 vaccine. *See* Ex. 9.

Because these plaintiffs have already received the equitable relief they seek, their claims

for relief are now moot. There is no equitable relief that the Court could grant these plaintiffs that would "have some effect in the real world." *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (quotation omitted). And although a plaintiff who has been injured can bring a retrospective action to recover damages, "that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future." *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991).[5]

In sum, Jane Does 4 and 6's and John Does 3, 4, 5, and 7's claims for injunctive and declaratory relief are moot because they have already received the religious exemptions they requested or, in the case of Jane Doe 7, have been vaccinated.

**B.      Jane Doe 2 and John Doe 6's claims for equitable relief are moot because they are not presently employed by or enrolled at the Anschutz Medical Campus.**

It is axiomatic that a plaintiff loses standing to challenge the constitutionality of a policy when he or she is no longer subject to that policy. *See Hale v. Ashcroft*, 683 F. Supp. 2d 1189, 1199 (D. Colo. 2009), *adopted by* 2009 U.S. Dist. LEXIS 73921 (D. Colo. Aug. 19, 2009). Here, two of the plaintiffs' claims are moot for that reason. Jane Doe 2 has resigned from her position as a physician with the University and John Doe 6 withdrew from the anesthesiology master's program. *See* Am. Compl. ¶¶ 79, 170; Ex. 26 to Am. Compl. Because these Plaintiffs are no longer associated with the Anschutz Medical Campus and are thus no longer subject to its policies, there is no equitable relief available for the Court to grant that would have any practical effect. The Court should accordingly dismiss Jane Doe 2 and John Doe 6's claims for injunctive and declaratory relief as moot.

---

[5] The Tenth Circuit recently found claims similar to those asserted by these six Plaintiffs to be moot in a case challenging the State of Colorado's restrictions on places of worship during the COVID-19 pandemic. *See Denver Bible Church*, 2022 U.S. App. LEXIS 1994, at *6–17.

C.    **Claims for equitable relief arising from the September 1 Policy are moot.**

As this Court has already concluded, the Plaintiffs' claims for prospective relief are also

moot as to the September 1 Policy. ECF No. 65 at 5–6. Even assuming Plaintiffs had standing to

challenge the September 1 Policy at the time they filed this lawsuit, the University's subsequent

replacement of the September 1 Policy with the Amended Policy rendered Plaintiffs' claims

moot.[6] *See, e.g.*, *Denver Bible Church*, 2022 U.S. App. LEXIS 1994, at *7–10 (plaintiffs'

constitutional and discrimination claims challenging Colorado's COVID-19 restrictions were

moot because the State had withdrawn the challenged restrictions). Indeed, the Tenth Circuit has

specifically held that "parties have no legally cognizable interest in the constitutional validity of

an obsolete statute." *Citizens for Responsible Gov't State PAC v. Davidson*, 236 F.3d 1174, 1182

(10th Cir. 2000). The same reasoning applies in the context of a repealed public university

policy. *See Young Am.'s Found. v. Kaler*, 14 F.4th 879, 886–87 (8th Cir. 2021). The Court

should dismiss as moot Plaintiffs' claims for equitable relief concerning the September 1 Policy

because that policy has been superseded by and replaced with the Amended Policy.

II.    **Certain of Plaintiffs' claims are barred by the Eleventh Amendment and should be dismissed pursuant to Rule 12(b)(1).**

All of Plaintiffs' claims against the Board of Regents should be dismissed in their entirety

on Eleventh Amendment immunity grounds and their claims against the remaining Defendants in

their official capacities should be dismissed in part. The Eleventh Amendment grants a State

immunity in federal court from suits brought either by citizens of other states or by its own

---

[6] The voluntarily cessation exception to mootness does not apply here because, "in general, the repeal of a challenged statute is one of those events that makes it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (alteration, quotation, and quotation marks omitted).

citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This sovereign immunity "extends to arms of the state," *Bright v. Univ. of Okla. Bd. of Regents*, 705 F. App'x 768, 769 (10th Cir. 2017), and to "state officials acting in their official capacities," *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010). Because the "assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits" of Plaintiffs' underlying claims. *Florez v. Johnson*, 63 F. App'x 432, 435 (10th Cir. 2003) (quotation omitted).

A.    **Plaintiffs' claims against the Board of Regents are barred by Eleventh Amendment immunity.**

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a "very narrow" exception to sovereign immunity. *Barrett v. Univ. of N.M. Bd. of Regents*, 562 F. App'x 692, 694 (10th Cir. 2014). That exception, however, applies only where the plaintiffs' claims are limited to declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and are aimed against state officers acting in their official capacities. *ANR Pipeline Co. v. LaFaver*, 150 F.3d 1178, 1188 (10th Cir. 1998). The Board of Regents is an arm of the State of Colorado and as such is "entitled to Eleventh Amendment Immunity." *Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005). A suit against the Board of Regents is a suit against the state itself and is therefore impermissible under the Eleventh Amendment.[7] *Id.*

The exception is inapplicable here because the *Ex parte Young* exception "has no application in suits against the States and their agencies, which are barred regardless of the relief

---

[7] Plaintiffs' section 1983 claims against the University fail for the additional reason that the University is not a "person" under section 1983. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 64 (1989); *Sturdevant v. Paulsen*, 218 F.3d 1160, 1167 (10th Cir. 2000) ("[A]n arm of the state [is] traditionally immune from damages liability under the Eleventh Amendment and therefore not a 'person' for purposes of liability under 42 U.S.C. § 1983.").

sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Accordingly, the Court should dismiss the Amended Complaint against the Board of Regents as

barred by the Eleventh Amendment.

> **B.    Eleventh Amendment immunity also bars Plaintiffs' claims against Saliman in his official capacity.**

Similarly, the *Ex parte Young* exception only permits suits against state officials acting in

their official capacities if the plaintiffs seek "only prospective equitable relief—as opposed to

any form of money damages or other legal relief." *ANR Pipeline Co.*, 150 F.3d at 1188. The state

official named as a defendant "must have *some connection with the enforcement*" of the

challenged statute. *Ex parte Young*, 209 U.S. at 157 (emphasis added). Otherwise, the plaintiff

would be "merely making him a party as a representative of the State, and thereby attempting to

make the State a party" in contravention of the Eleventh Amendment. *Id.* To satisfy this

requirement, the official must "have a particular duty to 'enforce' the statute in question and a

demonstrated willingness to exercise that duty." *Hendrickson v. AFSCME Council 18*, 992 F.3d

950, 965 (10th Cir. 2021) (quotation omitted).

Plaintiffs have not alleged—nor could they—any connection between Saliman and

enforcement of the University's vaccination policy. The Amended Complaint mentions Saliman

only once, merely alleging that "[h]is office issued, maintains, and oversees the COVID-19

vaccination mandate for all students and staff of the University." Am. Compl. ¶ 35. The pleading

contains no specific allegation that Saliman was involved in any alleged ongoing violation of

federal law. *See Hendrickson*, 992 F.3d at 965 ("the named state official"—and not merely his

office—"'must have some connection with the enforcement' of the challenged statute") (quoting

*Ex parte Young*, 209 U.S. at 157). Similarly, the Amended Complaint does not indicate that

Saliman had "a particular duty to 'enforce' the statute in question" or "a demonstrated

13

willingness to exercise that duty." *Id.* (quotation omitted).

The Court should dismiss all claims against Saliman under the Eleventh Amendment.

**C.      The Eleventh Amendment limits the relief Plaintiffs may seek against the Defendants sued in their *official* capacities.**

State sovereign immunity limits the scope of relief that Plaintiffs may seek against Defendants Elliman, Zimmer, Mediavilla, and Holland, all of whom Plaintiffs sued in *both* their official and individual capacities. Without distinction, the Amended Complaint seeks, among other relief, "nominal damages, actual and compensatory damages, and punitive damages." Am. Compl., Prayer for Relief (C). But under the Eleventh Amendment and *Ex parte Young*, monetary damages are available only on claims, if proved, against Defendants sued in their individual capacities. *See, e.g.*, *ANR Pipeline Co.*, 150 F.3d at 1188 (plaintiffs may seek "only prospective equitable relief—as opposed to any form of money damages or other legal relief" against state officers acting in their official capacities).

The Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction to the extent they seek monetary damages against Elliman, Zimmer, Mediavilla, and Holland in their *official* capacities.

**III.    Elliman, Zimmer, Mediavilla, and Holland are entitled to qualified immunity from claims brought against them under federal law in their *individual* capacities.**

"[P]ublic officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). Once a public official asserts qualified immunity, it is presumed to apply, and the burden then shifts to the plaintiffs "to demonstrate the complaint['s] factual allegations establish[] their right to recover against *each* [public official]." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018). To overcome the presumption at the motion to dismiss phase, Plaintiffs must show *both* (1) that the Amended Complaint

adequately alleges that each state official Defendant "violated a statutory or constitutional right," *and* (2) "that the right was clearly established at the time of the challenged conduct." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248 n.3 (10th Cir. 2020). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016).

Here, the Court should dismiss Counts I, II, III, and IV in their entirety to the extent they raise claims against Elliman, Zimmer, Mediavilla, and Holland in their individual capacities because these Defendants are entitled to qualified immunity under both prongs.

*First*, Plaintiffs have not sufficiently alleged any constitutional violation (as explained in more detail in *infra* Section IV). *See, e.g.*, *id.* ("If the plaintiff fails to establish either prong . . . , the defendant prevails on the defense."); *Crocker v. Glanz*, 752 F. App'x 564, 567 (10th Cir. 2018) ("Because we hold that the complaint inadequately alleges a constitutional violation by [the defendant], we need not address the clearly-established requirement.").

*Second*, Elliman, Zimmer, Mediavilla, and Holland did not violate clearly established law (whether under the First Amendment, the Equal Protection Clause, or the ADA) by enforcing the Amended Policy. "A constitutional right is clearly established if its contours are clear enough that a reasonable official would understand what he or she was doing violated it." *C.M. v. Urbina*, 640 F. App'x 825, 830 (10th Cir. 2016). "The dispositive question is 'whether the violative nature of [the] *particular* conduct [at issue] is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted). "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Urbina*, 640 F. App'x at 830 (quotation omitted).

As for the student plaintiffs, there was (and remains) no clearly established right to a religious exemption from the Amended Policy requiring all employees and students who work or learn on the Anschutz Medical Campus to become fully vaccinated against COVID-19. Neither the Supreme Court nor the Tenth Circuit has held that a public university or other public education institution violates its students' constitutional rights when it declines to provide religious exemptions to a COVID-19 vaccination requirement. This alone warrants dismissal. *See, e.g.*, *Stewart v. Beach*, 701 F.3d 1322, 1333 (10th Cir. 2012) (affirming dismissal of First Amendment claims on qualified immunity grounds where plaintiff failed to show that the law was clearly established); *Joritz v. Gray-Little*, 822 F. App'x 731, 741–42 (10th Cir. 2020) (similar).

For the employee plaintiffs, there likewise was (and remains) no clearly established right to religious exemptions from the University's neutral and generally applicable Amended Policy requiring them to be vaccinated against COVID-19. Neither the Supreme Court nor the Tenth Circuit has held that the Free Exercise Clause grants individuals an absolute right to obtain religious exemptions from a state policy that passes muster under First Amendment, as the University's Amended Policy does. Again, the lack of clearly established law warrants dismissal. *See, e.g.*, *Stewart*, 701 F.3d at 1333.

The Supreme Court has, in fact, upheld or declined to enjoin otherwise valid state laws that do not contain religious exemptions, *see, e.g.*, *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *Doe v. Mills*, 16 F.4th 20 (1st Cir. 2021), *application for injunctive relief denied*, 142 S. Ct. 17 (2021), *mot. to expedite consideration of pet. for cert. denied*, 142 S. Ct. 581 (2021), and suggested that creating an absolute right to religious exemptions from government laws and policies would be contrary to the First Amendment, *see Prince v. Massachusetts*, 321 U.S. 158,

166–67 (1944). *See also, e.g.*, *Dr. A. v. Hochul*, 142 S. Ct. 552 (2021) (denying injunctive relief as to First Amendment claims based on lack of religious exemption to vaccine requirement). Indeed, the Supreme Court in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), upheld a Massachusetts statute mandating that all state residents be vaccinated against smallpox on the grounds that requiring vaccination was within the State's police power. *Id.* at 25–26. That statute contained no religious exemption. *See id.*; *see also Prince*, 321 U.S. at 166–67 (a parent "cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds" because "[t]he right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death").

Circuit courts have also specifically disavowed the notion that students have a right to receive religious exemptions from vaccine mandates. *See, e.g.*, *Phillips v. City of New York*, 775 F.3d 538, 543 (2d Cir. 2015) (per curiam) ("[M]andatory vaccination as a condition for admission to school does not violate the Free Exercise Clause."); *Doe v. San Diego Unified Sch. Dist.*, 2021 U.S. App. LEXIS 35760, at *15 (9th Cir. Dec. 4, 2021) (declining to enjoin a public school district policy requiring all students to be fully vaccinated against COVID-19 without providing religious exemptions), *reh'g en banc denied*, 2022 U.S. App. LEXIS 1108 (Jan. 14, 2022).

Under either prong, the individual Defendants are entitled to qualified immunity from Plaintiffs' individual-capacity claims brought in Counts I, II, III, and IV.

IV.     **All of Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.**

A.      **The Court should dismiss Count I because Plaintiffs fail to state a claim for violation of the Free Exercise Clause.**

"While the First Amendment provides absolute protection to religious thoughts and beliefs, the free exercise clause does not prohibit Congress and local governments from validly

regulating religious conduct." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d

643, 649 (10th Cir. 2006). The right to free exercise does not "relieve an individual of the

obligation to comply with a 'valid and neutral law of general applicability on the ground that the

law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp. Div. v.*

*Smith*, 494 U.S. 872, 879 (1990) (quotation omitted). To sufficiently allege a free exercise clause

claim, Plaintiffs must first identify a government action that burdens religious practice or belief.

*Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1232–33 (10th Cir. 2009). If the

government action is neutral or generally applicable, courts apply a rational basis review and the

plaintiff must then show that the government action is not rationally related to a legitimate

governmental interest. *Id.* If the government action is not neutral or generally applicable, strict

scrutiny applies and the plaintiff must show that the government action is not narrowly tailored

to advance a compelling governmental interest. *Id.*

      Here, Plaintiffs have not stated a claim for violation of the Free Exercise Clause because,

even taking the Amended Complaint's allegations as true, the Amended Policy survives both

rational basis review and strict scrutiny. Either way, the Court should dismiss Count I.

      **1.**      **Plaintiffs' claims are subject to rational basis review because the**
             **Amended Policy is neutral and generally applicable.**

      The Court should apply rational basis review to the Plaintiffs' claims because even if the

Amended Policy has the effect of slightly burdening Plaintiffs' free exercise rights, the policy

itself and the manner in which Defendants have applied it is both neutral and generally

applicable. *See Grace United Methodist Church*, 451 F.3d at 649 ("Neutral rules of general

applicability normally do not raise free exercise concerns even if they incidentally burden a

particular religious practice or belief.").

      *First*, this Court has already correctly concluded that the Amended Policy is neutral on its

face and as applied to Plaintiffs. ECF No. 65 at 7. "A law is neutral so long as its object is something other than the infringement or restriction of religious practices." *Grace United Methodist Church*, 451 F.3d at 649–50. Despite Plaintiffs' conclusory allegations to the contrary, *see, e.g.*, Am. Compl. ¶¶ 218–19, the Amended Policy is neutral on its face because its language does not differentiate between religions or on the basis of religion versus nonreligion. *See Grace United Methodist Church*, 451 F.3d at 649–50 ("[A] law lacks facial neutrality if it refers to a religious practice without a secular meaning discernible from the language or context.") (quotation omitted). The Amended Policy applies to all University employees, students, and other individuals on the Anschutz Medical Campus regardless of whether they adhere to a particular religion, or to a religion as opposed to nonreligion. It is facially neutral.

And the fact that the Amended Policy makes both students and employees eligible for medical exemptions but only employees eligible for religious exemptions does not indicate that the policy is not neutral on its face or as applied. *See* ECF No. 65 at 8 ("Allowing employees, but not students, to request religious accommodations treats employees and students differently, but it does not single out religion or religious practices."). Indeed, the Tenth Circuit (and other courts of appeal) has expressly rejected the notion that any state law or policy which contains a secular exemption must necessarily provide a comparable religious exemption to be deemed neutral.[8]

---

[8] Moreover, the Supreme Court has twice declined opportunities to alter a ruling by the First Circuit that left in place a Maine regulation requiring all workers in the State's licensed healthcare facilities to be vaccinated against COVID-19 and which, like the Amended Policy's provisions applicable to students, includes a medical exemption but no religious exemption. *See Mills*, 16 F.4th 20 (1st Cir. 2021), *application for injunctive relief denied*, 142 S. Ct. 17 (2021), *mot. to expedite consideration of pet. for cert. denied*, 142 S. Ct. 581 (2021). This signals the Supreme Court's unwillingness to alter longstanding precedent holding that "it is within the police power of a State to provide for compulsory vaccination." *Zucht v. King*, 260 U.S. 174, 176 (1922); *accord Biden v. Missouri*, 142 S. Ct. 647, 658 (2022) (Thomas, J., dissenting, joined by Justices Alito, Gorsuch, and Barrett) ("Vaccine mandates also fall squarely within the State's police power . . . .") (citing *Zucht*, 260 U.S. at 176).

*See, e.g.*, *Denver Bible Church*, 2022 U.S. App. LEXIS 1994, at *21 ("[T]he mere existence of 'a secular exemption' does not 'automatically create a claim for a religious exemption.'") (quotation omitted); *Grace United Methodist Church*, 451 F.3d at 651 (similar); *see also Swanson v. Guthrie Indep. Sch. Dist. No. 1-L*, 135 F.3d 694, 698 (10th Cir. 1998); *San Diego Unified Sch. Dist.*, 2021 U.S. App. LEXIS 35760, at *6–13; *Kane v. De Blasio*, 2021 U.S. App. LEXIS 35102, at *15–20 (2d Cir. Nov. 28, 2021).

Plaintiffs have alleged no facts—nor could they—suggesting that the University's "object" in enacting or applying the Amended Policy was "the infringement or restriction of religious practices," which is the linchpin of the neutrality inquiry. *Grace United Methodist Church*, 451 F.3d at 649–50. Although Plaintiffs make conclusory allegations that "Defendants clearly intend to wield th[e] policy to challenge and reject Plaintiffs' sincere religious beliefs," Am. Compl. ¶ 218, they have not alleged specific facts that indicate the Amended Policy's purpose is "covert suppression of particular religious beliefs."[9] *Bowen v. Roy*, 476 U.S. 693, 703 (1986). Plaintiffs have thus failed to allege that the Amended Policy is not neutral toward religion.

*Second*, this Court has already correctly concluded that the Amended Policy is generally applicable. ECF No. 65 at 9. "To be generally applicable, a law may not selectively burden religiously motivated conduct exempting comparable secularly motivated conduct." *Mills*,

---

[9] The Amended Complaint contains a few spare allegations that Plaintiffs attempt to frame as animus on the part of Defendants towards religion, *see* Am. Compl. ¶ 169 (alleging that Zimmer told John Doe 6 in August 2021 "that the only religious requests that could be approved were for those students who never had gotten, and never would get, any vaccinations"—"like Christian Scientists"), ¶ 131 (stating that the Office of University Counsel told John Doe 1 in early August 2021 that "[p]ursuant to our policy the religious exemption applies to people whose religion precludes all vaccinations"), but these allegations pertain to the September 1 Policy, which is no longer in place. Moreover, the allegations do not rise to the level of animus that the Supreme Court has found indicative of a lack of neutrality on the part of the state.

16 F.4th at 29. "A law is not generally applicable if it 'invites' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Id.* (quotation omitted). Nor is a law generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* (quotation omitted).

The Amended Policy is generally applicable because it includes only "objectively defined categories of exemptions . . . that do not invite the government to decide which reasons for not complying with the policy are worthy of solicitude." *Kane*, 2021 U.S. App. LEXIS 35102, at *18–19 (quotation and quotation marks omitted). To be eligible for the medical exemption, an employee or student must provide a medical exemption form signed by a physician, advanced practice nurse, or physician assistant licensed in Colorado stating that COVID-19 vaccination "is absolutely contraindicated [for the individual] due to other medical conditions." *See* Amended Policy at 3. Similarly, to receive an exemption based on religious beliefs an employee must "submit their religious accommodation request form via the campus verification system." *Id.* at 4. The University's process of reviewing eligibility for both medical and religious exemptions is thus limited to confirming that the applicant is in fact eligible to apply for the exemption under the Amended Policy, *i.e.*, that the individual has a verified medical condition that makes vaccination medically unadvisable or is seeking a religious exemption on the basis of a sincerely held religious belief (as opposed to a personal objection that is not rooted in religion). *See Mills*, 16 F.4th at 30 ("No case in this circuit and no case of the Supreme Court holds that a single objective exemption renders a rule not generally applicable.").

Moreover, the University does not probe the sincerity of Defendants' religious beliefs in evaluating religious exemption request forms under the Amended Policy, nor have Plaintiffs

made any specific allegations to that effect. Once an individual establishes eligibility for either type of exemption by providing a note from a healthcare provider or submitting a religious exemption form asserting a sincerely held religious belief, the University applies objective criteria to determine whether granting the exemption would pose an undue hardship to the University. *See generally* Amended Policy. The process for granting medical and religious exemptions to eligible individuals is thus guided by the same objective criteria. The Amended Complaint does not contain any non-conclusory or non-speculative factual allegations to the contrary concerning the Amended Policy.

And Plaintiffs have not alleged specific facts that suggest the Amended Policy provides for the kind of individualized exemptions that trigger strict scrutiny. "A system of individualized exemptions is one that gives rise to the application of a subjective test." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1187 (10th Cir. 2021) (quotation omitted). But an exemption is not considered "'individualized' simply because it 'contains express exceptions for objectively defined categories of persons.'" *Id.* (quotation omitted). "[W]hile of course it takes some degree of individualized inquiry to determine whether a person is eligible for even a strictly defined exemption, that kind of limited yes-or-no inquiry is qualitatively different from the kind of case-by-case system envisioned by the *Smith* Court . . . ." *Id.* (quotation omitted).

Plaintiffs suggest that the Amended Policy treats religious conduct more harshly than secular conduct because (1) the policy provides medical exemptions to both employees and students but makes students ineligible for religious exemptions; and (2) its application has resulted in some employee Plaintiffs being denied religious exemptions due to their inability to work fully remotely. *See* Am. Compl. ¶¶ 219–20. This argument misses the mark because it ignores a meaningful distinction between the two exemptions. Requiring individuals with

religious objections to get vaccinated furthers the University's interest in protecting the health of its community whereas requiring individuals for whom COVID-19 vaccination is medically contraindicated would undermine that interest. *See We the Patriots USA, Inc. v. Hochul*, 2021 U.S. App. LEXIS 32880, at *33–34 (2d Cir. Nov. 4, 2021) ("Vaccinating a[n] . . . employee who is known or expected to be injured by the vaccine would harm her health . . . ."); *Jacobson*, 197 U.S. at 38–39 (State may not require vaccination of individuals with medical contraindications).

By making medical exemptions available to a broader section of the University community than religious exemptions, the University is not restricting religious conduct while permitting secular activities that pose similar risks to COVID-19 transmission. Rather, the University is advancing its interest in protecting the health of its employees, students, patients, and community members by maximizing the number of individuals who get vaccinated while ensuring that individuals for whom the vaccine requirement "poses a physical health risk" are not subject to it. *Mills*, 16 F.4th at 31.

The Amended Policy is subject to rational basis review because it is both neutral and generally applicable.

### 2.      The Amended Policy satisfies rational basis review.

As this Court has already held, the Amended Policy satisfies rational basis review. ECF No. 65 at 6. It is obvious and well established that states have a legitimate governmental interest in enacting rules to protect the health of their employees, students, and community members. *See, e.g.*, *Jacobson*, 197 U.S. at 25; *We the Patriots USA*, 2021 U.S. App. LEXIS 32880, at *45; *Mills*, 16 F.4th at 32. Because the Amended Policy seeks to maximize the number of individuals at the Anschutz Medical Campus who are vaccinated, the Amended Policy is rationally related to the University's asserted goal of protecting the health of Anschutz Medical Campus patients,

employees, students, and other community members.

3.   **The Amended Policy would satisfy strict scrutiny in any event.**

Even if strict scrutiny applied, it would make no difference here. That's because Plaintiffs

do not allege facts sufficient to state a violation of their free exercise rights. To satisfy strict

scrutiny, the Amended Policy must be narrowly tailored to serve a compelling state interest.

*Corder*, 566 F.3d at 1233. "Stemming the spread of COVID-19 is unquestionably a compelling

interest." *Mills*, 16 F.4th at 32 (quotation omitted); *accord We the Patriots USA*, 2021 U.S. App.

LEXIS 32880, at *56. The Amended Complaint's vague and conclusory allegations to the

contrary that "Defendants present no reason at all for this sweeping disparity in treatment, which

is the opposite of a narrowly tailored means to achieve a compelling interest," *see, e.g.*, Am.

Compl. ¶ 64, are insufficient to support the conclusion that the Amended Policy is not narrowly

tailored to serve a compelling government interest.

B.   **The Court should dismiss Count II because Plaintiffs fail to state a claim for violation of the Establishment Clause.**

The Establishment Clause provides that "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Under

the Establishment Clause, the Court must determine whether the scrutinized government action

"in reality," "establishes a religion or religious faith, or tends to do so." *Lynch v. Donnelly*,

465 U.S. 668, 678 (1984). To sufficiently allege an establishment clause claim, Plaintiffs must

allege that the government coerced them "to support or participate in religion or its exercise."

*Janny v. Gomez*, 8 F.4th 883, 904 (10th Cir. 2021).

The Amended Complaint alleges that both the September 1 Policy and the Amended

Policy violate the Establishment Clause—the former because it requires individuals seeking a

religious exemption to adhere to a specific set of religious beliefs in order to obtain the

exemption, and the latter because in enforcing the Amended Policy the Defendants will continue "repeatedly and falsely attacking Plaintiffs' sincerity and [maintain] the inquisition tactics begun under the September 1 Policy." Am. Compl. ¶ 235. These allegations fall short of making out an Establishment Clause violation.

*First*, to the extent Plaintiffs rely on allegations about the September 1 Policy to state claim for violation of the Establishment Clause, that claim is moot. *See supra* Section I.C.

*Second*, and as to both policies, Plaintiffs have alleged no facts at all to suggest the Defendants are attempting to "coerce[] anyone to support or participate in religion or its exercise." *Janny*, 8 F.4th at 904. The plain text of the Amended Policy illustrates that to be eligible for a religious exemption an individual need only submit a form seeking an exemption on the basis of their "religious beliefs." *See* Amended Policy at 4. As a result, Plaintiffs have failed to sufficiently allege facts to support an Establishment Clause claim, and the Court should therefore dismiss Count II.

> **C.** **The Court should dismiss Count III because Plaintiffs fail to state a claim for violation of the Equal Protection Clause.**

To sufficiently state a claim for an equal protection violation, the plaintiff must "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Wasatch Pedicab Co. v. Salt Lake City Corp.*, 343 F. App'x 351, 354 (10th Cir. 2009) (quotation omitted). Critically, "[w]hen a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review." *Mills*, 16 F.4th at 35 (citing *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)). So if the Court determines that Plaintiffs have not stated a claim for violation of their Free Exercise rights and that the Amended Policy has some rational basis, Plaintiffs' equal protection claim necessarily also fails. *See id.*; *Kane*, 2021 U.S. App. LEXIS 35102, at *21 n.14.

Here, the Amended Complaint fails to specifically allege that Plaintiffs have been treated differently than others who are actually similarly situated. *See Grace United Methodist Church*, 451 F.3d at 659 (affirming dismissal where plaintiff failed to provide example of how it was treated differently than similarly situated entities). Plaintiffs allege, for example, that the Amended Policy "fail[s] to provide Plaintiffs with equal treatment to similarly situated employees and students who have received medical exemptions under the Policies." Am. Compl. ¶ 245. But individuals who have received medical exemptions are not similarly situated to Plaintiffs because they have underlying medical conditions which healthcare providers have determined make COVID-19 vaccination a serious health risk.

Indeed, Courts routinely reject such claims regarding vaccination mandates, *see, e.g.*, *Zucht*, 260 U.S. at 177; *Phillips*, 775 F.3d at 543–44, and have done so repeatedly with COVID vaccinations, *see, e.g.*, *Colo. Contractors Ass'n v. City & County of Denver*, 2022 U.S. Dist. LEXIS 20752, at *14–16 (D. Colo. Feb. 4, 2022); *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 2022 U.S. Dist. LEXIS 5751, at *40–44 (D. Conn. Jan. 11, 2022); *Kheriaty v. Regents of the Univ. of Cal.*, 2021 U.S. Dist. LEXIS 249705, at *22–25 (C.D. Cal. Dec. 8, 2021).

Plaintiffs have thus failed to identify individuals who are similarly situated to them but who do not hold religious beliefs against COVID-19 treatment who have received different treatment under the Amended Policy. Plaintiffs therefore fail to state a claim for violation of the Equal Protection Clause.

### D.    The Court should dismiss Count IV because Plaintiffs fail to state a claim for violation of the ADA.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.

§ 12132. An individual is considered disabled under the ADA if he or she has "a physical or

mental impairment that substantially limits one or more major life activities," has "a record of

such impairment," or is "regarded as having such an impairment." *Id.* § 12102(1). Being

"regarded as having such an impairment" means that the individual "has [already] been subjected

to an action prohibited under th[e] Act because of an actual or perceived physical or mental

impairment." *Id.* § 12102(3)(A). To sufficiently allege an ADA violation, Plaintiffs must allege

that (1) they are qualified individuals with disabilities, "(2) who w[ere] excluded from

participation in or denied the benefits of a public entity's services, programs, or activities, and

(3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Cohon v.

State of N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quotation omitted).

Plaintiffs claim that they suffer from a disability as that term is defined by the ADA

because Defendants treat "the absence of COVID-vaccination generated antibodies" as a

disability and have discriminated against Plaintiffs on the basis of that disability by denying them

access to the full benefits of employment and study at the University. *See* Am. Compl. ¶¶ 253–

55. These allegations hold no water. Being unvaccinated is not a disability as the ADA defines

that term because vaccination status, in and of itself, is not "a physical or mental impairment"

and has no bearing on an individual's ability to pursue "major life activities." 42 U.S.C.

§ 12102(1)(A). Nor have Plaintiffs alleged facts that indicate "a record of such an impairment"

or that the Defendants have in the past perceived Plaintiffs to have "an actual or perceived

physical or mental impairment," *id.* § 12102(1)(B) & (C), or that Defendants denied them access

to University resources on that basis. Rather, Plaintiffs allege throughout the Amended

Complaint that Defendants denied them accommodations because of their "religious beliefs"—

not because of any deficiency in vaccine-generated antibodies. *See, e.g.*, Am. Compl. ¶¶ 3, 6, 8, 11, 63, 64. Plaintiffs' ADA fails as a matter of law and should be dismissed.

> **E.    The Court should dismiss Count V because Plaintiffs fail to state a claim under the Religious Freedom Clauses of the Colorado Constitution.**

Plaintiffs claim that "[i]n enacting and enforcing their Policies," Defendants have violated Article II, section 4 of the Colorado Constitution. Am. Compl. ¶ 262. The Colorado Constitution provides that "[t]he free exercise and enjoyment of religious profession and worship, without discrimination, shall forever hereafter be guaranteed; and no person shall be denied any civil or political right, privilege or capacity, on account of his opinions concerning religion." Colo. Const. art. II, § 4. Although the language of Article II, section 4 may be more specific than that of the U.S. Constitution's Establishment Clause, the Colorado Supreme Court has held that the two provisions "embod[y] the same values of free exercise and governmental noninvolvement." *Bishop & Diocese of Colo. v. Mote*, 716 P.2d 85, 91 n.5 (Colo. 1986). Courts considering Article II, section 4 challenges thus "derive[] guidance in interpreting [that] Clause by looking at the Establishment Clause of the United States Constitution and the body of federal law that has construed it." *Conrad v. Denver*, 724 P.2d 1309, 1313 (Colo. 1986) (footnote omitted).

Plaintiffs' state constitutional claim fails for the same reasons as their federal claims. Because Colorado appellate courts have consistently analyzed religious freedom claims under the Colorado Constitution by relying on federal precedent, and "the Colorado Supreme Court has never indicated that an alternative analysis should apply," the Court should analyze Plaintiffs' state law claims together with their federal First Amendment challenges. *Craig v. Masterpiece Cakeshop, Inc.*, 370 P.3d 272, 293 (Colo. App. 2015), *rev'd on other grounds sub nom. Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719 (2018). And as

discussed above, *supra* Sections IV.A & B, Plaintiffs have failed to plausibly allege any violation of the First Amendment.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiffs' Amended Complaint.

Respectfully submitted this 17th day of February 2022.

  */s/ Jessica J. Smith*
Matthew J. Smith***
Gregory Goldberg***
Jessica J. Smith***
Holland & Hart, LLP
555 17th Street, Suite 3200
Denver, CO 80202
Tel: (303) 295-8000
mjsmith@hollandhart.com
ggoldberg@hollandhart.com
jjsmith@hollandhart.com

***Attorneys for Defendants Donald Elliman, Shanta Zimmer, Eric Mediavilla, and Ann-Michael Holland in their individual capacities

PHILIP J. WEISER
Attorney General

  */s/ Jacquelynn Rich Fredericks*
JACQUELYNN RICH FREDERICKS*
First Assistant Attorney General
KATHLEEN SPALDING*
Senior Assistant Attorney General
GRANT T. SULLIVAN*
Assistant Solicitor General
MEGAN PARIS RUNDLET*
Senior Assistant Solicitor General

Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Tel: (720) 508-6171
kit.spalding@coag.gov

29

jacquelynn.richfredericks@coag.gov
grant.sullivan@coag.gov
megan.rundlet@coag.gov

*Counsel of Record for Defendants Board of
Regents, and for Defendants Todd Saliman, Donald
Elliman, Shanta Zimmer, Eric Mediavilla, and Ann-
Michael Holland in their official capacities


 _/s/ Hermine Kallman_
HERMINE KALLMAN**
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
Tel: (303) 860-5691
hermine.kallman@cu.edu

**Counsel of Record for Defendants Board of
Regents, Todd Saliman, Donald Elliman, Shanta
Zimmer, Eric Mediavilla, and Ann-Michael Holland

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 17, 2022, I caused the foregoing motion to be electronically

served on the following parties via CM/ECF:

Joseph Brown
Theresa Sidebotham
Telios Law PLLC
P.O. Box 3488
19925 Monument Hill Road
Monument, CO 80132
jjb@telioslaw.com
tls@telioslaw.com

Michael McHale
Michael G. McHale, Attorney at Law
10506 Burt Circle, Suite 110
Omaha, NE 68114
mmchale@thomasmoresociety.org

Martin Whittaker
Peter Breen
Thomas More Society
309 W. Washington Street, Suite 1250
Chicago, IL 60606
privatrecht@gmail.com
pbreen@thomasmoresociety.org

*/s/ Wendy McCann*