**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02637-RM-KMT

JANE DOES 1 through 11, and JOHN DOES 1, 3 through 7,

     Plaintiffs,

v.

BOARD OF REGENTS of the UNIVERSITY OF COLORADO, et al.,

     Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

---

Nearly two million patients are treated each year at the Anschutz Medical Campus, including the elderly, the very young, and the very sick. Defendants are responsible for ensuring the health and safety of each of those patients, as well as that of every employee and student who is part of the Anschutz community. To protect that community in the midst of the global pandemic, Defendants promulgated a policy requiring COVID-19 vaccinations for all Anschutz students and employees, subject to certain exemptions. After failing to prove a likelihood of success on the merits in their effort to enjoin that policy, Plaintiffs now rehash the same arguments in hoping to convince the Court that Defendants' health and safety measure was actually a nefarious scheme aimed at culling certain religious adherents from the Anschutz community. Plaintiffs' claims are conjured from thin air, premised on conclusory assertions of animosity and a superseded vaccination policy in place for less than one month. The Court should reject the claims and arguments advanced by Plaintiffs—just as courts all over the country have—and dismiss the Amended Complaint.

**I.    There is no live controversy, mooting several of Plaintiffs' claims.**

Plaintiffs' Amended Complaint includes claims for declaratory and injunctive relief

1

aimed at the September 1 Policy, which the University repealed after three weeks and replaced with the September 24 Amended Policy. Am. Compl. ¶ 61. The University then granted religious accommodations to several Plaintiffs, while others voluntarily left the University and one actually got vaccinated. These events moot several of Plaintiffs' claims because they render it "impossible for the court to grant any effectual relief." *Denver Bible Church v. Polis*, 2022 U.S. App. LEXIS 1994, at *7 (10th Cir. Jan. 24, 2022) (quotation omitted).

### A. Jane Does 4 and 6 and John Does 3, 4, 5, and 7 have received the requested accommodations, and Jane Doe 7 received the vaccine.

There is no present controversy between Defendants and these Plaintiffs because, contrary to Plaintiffs' assertion, they are not "required to submit to mandatory COVID-19 vaccination or else lose their jobs." ECF No. 81 at 2. Plaintiffs concede—as they must—that these Plaintiffs have been allowed to work remotely and thus are "*removed* from the scope of the Policy." *Id.* at 5. This alone moots their claims. The Court need not consider whether Defendants are constitutionally required to grant these Plaintiffs religious exemptions, because "[t]here is no point in ordering an action that has already taken place." *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 728 (10th Cir. 1997).

Recognizing the unsustainability of their arguments, Plaintiffs now pivot to suggest that these accommodations are insufficient because they involve remote work. But a glance back at the Amended Complaint reveals that Plaintiffs' claims were <u>not</u> based on their dissatisfaction with working remotely but on Defendants' alleged failure to honor Plaintiffs' religious beliefs. *See, e.g.*, Am. Compl. ¶¶ 193–202 (describing "[h]ow Plaintiffs have been harmed" and focusing on threatened job loss); *id.* at ¶¶ 212–29 (Free Exercise claim based on denial of accommodations). The Amended Complaint does reference remote work for John Does 3, 5, and 7, but those allegations are premised on Plaintiffs' unfounded concerns that they would "soon

become ineffective and eventually unable to perform [their] job[s]." *Id.* at ¶¶ 156, 166, 177. This claim is not ripe (and speculative anyway) and undermined by the accommodations afforded by Defendants allowing these Plaintiffs to work remotely indefinitely. *See, e.g.*, ECF No. 76-2 (accommodating Plaintiff whose job "has always been designated a 100 percent remote position"). As the pandemic has proven, fully remote work is more than possible and does not suggest that these Plaintiffs are likely to lose their jobs.[1]

**B.      Jane Doe 2 and John Doe 6 each voluntarily left the University and are thus no longer subject to the Amended Policy.**

Plaintiffs admit—as again they must—that "these Plaintiffs separated from the University" but argue that they can still challenge the Amended Policy because their separation was in connection with that policy. ECF No. 81 at 8. The Court can give these claims short shrift under longstanding Tenth Circuit case law, which stands for the now-obvious proposition that a plaintiff's request for declaratory relief "cannot be considered" when the plaintiff's "lack of any present or probable future connection to [the defendant] moots her claim for relief." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994); *accord Beattie v. United States*, 949 F.2d 1092, 1094 (10th Cir. 1991) ("Under the principles recited above, Plaintiff's termination of his employment . . . clearly mooted any claims for relief in this regard."). Plaintiffs thus cannot maintain equitable claims against a policy that no longer applies to them.

**C.      The Court cannot grant any equitable relief relating to a repealed policy because there is no relief to grant.**

This Court has already concluded on two occasions that Plaintiffs' equitable claims

---

[1] Plaintiffs do not dispute that Jane Doe 7 received the vaccine but argue that her claim is not moot because the University *might* require a vaccine booster in the future. ECF No. 81 at 8 n.6. But elsewhere, Plaintiffs admit there is no current booster-shot mandate. *Id.* at 26. Thus, Jane Doe 7 is in compliance with the Amended Policy and any potential controversy based on a hypothetical future refusal to a hypothetical future booster requirement is not ripe for resolution.

pertaining to the September 1 Policy are moot. ECF No. 21 at 2–3; ECF No. 65 at 5–6. The Court is correct, as any equitable relief aimed at that repealed and superseded policy would have no effect in the real world because it is the Amended Policy that now controls. *See, e.g.*, *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1112 (10th Cir. 2010). Plaintiffs now reassert their failed arguments and insist that the September 1 Policy, superseded after three weeks in 2021, is somehow still causing them harm. Yet Plaintiffs fail to identify either the specifics of the claimed harm or any meaningful prospective relief the Court could provide regarding the September 1 Policy when the University has already repealed that policy and reconsidered Plaintiffs' accommodation requests under the Amended Policy. There is simply no real-world relief the Court can grant under the repealed September 1 Policy.[2]

Plaintiffs' claimed need for additional "process" to challenge "undue hardship" determinations is likewise unavailing because it relates specifically to the Amended Policy, *not* the September 1 Policy; every claim by Plaintiffs pertaining to the September 1 Policy remains fatally moot. ECF No. 81 at 9. Whatever "liberty interest" in avoiding termination Plaintiffs might claim, that interest implicates the Amended Policy, *not* the repealed policy which no longer applies to any Plaintiff.

Moreover, Plaintiffs do nothing to distinguish *Denver Bible Church v. Polis*, 2022 U.S. App. LEXIS 1994 (10th Cir. Jan. 24, 2022), which squarely controls this case. There, the Tenth Circuit deemed moot a challenge to COVID-related public health orders because the requested equitable relief would have no effect on the State's future conduct because it had since superseded the challenged health orders and thus no longer enforced them. *Id.* at *9–10. *Young*

---

[2] Even for those Plaintiffs who separated from the University prior to review under the Amended Policy, equitable relief pertaining to the September 1 Policy would have no real-world impact because those Plaintiffs would still be subject to the Amended Policy instead.

*America's Foundation v. Kaler*, 14 F.4th 879 (8th Cir. 2021), is likewise on point in rejecting as moot a challenge to a policy that had been abrogated and replaced by a new policy. *Id.* at 886–87 ("[T]he new policy is distinct from the [old policy] such that providing declaratory or injunctive relief with respect to the [old policy] would have no effect . . . ."). Plaintiffs' equitable claims against the September 1 Policy are moot and the Court should dismiss them.

## II.     The Eleventh Amendment bars all claims for damages against Defendants sued in their official capacity and all claims against the Board of Regents and Saliman.

Plaintiffs concede that the Board of Regents is entitled to Eleventh Amendment immunity from their constitutional claims and that they cannot assert damages claims against Defendants in their official capacities. ECF No. 81 at 10–11. These claims should all be dismissed. Plaintiffs insist, however, that (A) the Board of Regents is not immune from an ADA claim, and (B) Saliman, the President of the University, is not immune at all under *Ex parte Young*. Plaintiffs are wrong on both counts.

### A.     The Board of Regents' immunity covers Plaintiffs' ADA claim.

Although Title II of the ADA purports to abrogate state sovereign immunity, the validity of that abrogation must be determined on a case-by-case basis. *Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012). While Plaintiffs quote the relevant standard, they do not attempt to show how it would be satisfied here. Nor could they, because (1) Plaintiffs do not state a plausible claim under the ADA, (2) Plaintiffs do not state a plausible claim under the Fourteenth Amendment,[3] and (3) there is no documented history of constitutional violations related to Plaintiffs' novel (and unsupportable) theory of "disability" based on vaccination status. *See id.* at 1113–25 (applying relevant standard and concluding that Title II does not validly abrogate state

---

[3] Plaintiffs' failure to state a claim is addressed in *infra* Section IV.

sovereign immunity); *Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, 561 F. App'x 661, 665–68 (10th Cir. 2014) (same). Because there is no valid abrogation of state sovereign immunity in this context, the Board of Regents is entitled to immunity from Plaintiffs' ADA claim in addition to its undisputed immunity from Plaintiffs' other claims.

### B. Defendant Saliman is entitled to Eleventh Amendment immunity.

Plaintiffs acknowledge that Saliman, the University President, is entitled to immunity unless he fits within the *Ex parte Young* exception, which requires "a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quotation omitted). Saliman is referenced in only a single allegation in the Amended Complaint, which states that he is "the President of the University of Colorado" and "[h]is office issued, maintains, and oversees the COVID-19 vaccination mandate for all students and staff of the University." Am. Compl. ¶ 35. In an associated footnote, Plaintiffs expressly admit that they cannot establish any actual connection between Saliman and the Amended Policy, because "Plaintiffs do not know the extent or nature of Defendant Saliman's involvement." *Id.* at ¶ 35 n.1. Plaintiffs thus rely solely on the general duty of Saliman's office to enforce University policies. This is woefully insufficient under the *Ex parte Young* exception, which requires "more than a mere general duty to enforce the law." *Hendrickson*, 992 F.3d at 965 (quotation omitted). Where the connection to a challenged policy "stems from [a] general enforcement power" and not "a particular duty to enforce the challenged [policy]," Defendants "are not proper parties, and they have Eleventh Amendment immunity." *Id.* at 967.

Here, Saliman has no direct connection to or any particular duty to enforce the Amended Policy, which, per its own terms, is to be enforced by the "Executive Vice Chancellor for

Administration and Finance | CFO, University of Colorado Anschutz Medical Campus." Ex. 28 to Am. Compl. The fact that Saliman "appoints the Anschutz Chancellor, who in turn" approved the Amended Policy, ECF No. 81 at 12 (emphasis and footnote omitted), is precisely the sort of daisy-chain connection the Tenth Circuit has deemed to be insufficient to trigger the *Ex parte Young* exception. *See Hendrickson*, 992 F.3d at 965; *Chamber of Com. of the U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010).

   Nor can Plaintiffs rely on *Coalition To Defend Affirmative Action v. Brown*, 674 F.3d 1128 (9th Cir. 2012), which held that the requisite connection "must be fairly direct" and that "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.* at 1134 (quotation omitted). The court held that the state official at issue had that "fairly direct" connection because he was responsible for enforcing the challenged policy, which designated no other enforcement entity. *Id.* at 1134–35. Here, in contrast, the Amended Policy expressly designates an enforcement entity, and it is not Saliman.[4] Ex. 28 to Am. Compl. The *Ex parte Young* exception does not come close to applying here, and the Court should dismiss all claims against Saliman.[5]

**III.    Defendants are entitled to qualified immunity from claims brought against them under federal law in their individual capacities.**

   As explained in more detail in *infra* Section IV, Plaintiffs do not plausibly allege any

---

[4] Plaintiffs' resort to *El-Ghori v. Grimes*, 23 F. Supp. 2d 1259 (D. Kan. 1998), is likewise unavailing. That district court found a state official *entitled* to Eleventh Amendment immunity, and Plaintiffs' reliance on *Grimes* confuses a necessary condition for a sufficient one: a state official must have the power to perform the requested act but must *also* have "a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." *Hendrickson*, 992 F.3d at 965. The latter requirements are not satisfied here.

[5] For some reason Plaintiffs cite Fed. R. Civ. P. 25(d) and 17(d), but those rules—dealing with substitution of parties and designation of a public officer by title and name—have nothing to do with Eleventh Amendment immunity and are unresponsive to Defendants' arguments.

violation of federal law. While that alone renders Defendants entitled to qualified immunity, Plaintiffs *also* fail to meet their burden of showing that their claimed rights were clearly established at the time of the challenged conduct. This is true for both (A) the Amended Policy, and (B) the September 1 Policy.[6]

### A. The Amended Policy does not violate clearly established law.

The Supreme Court and circuit courts all over the country have rejected arguments just like Plaintiffs' in upholding the constitutionality of vaccination mandates without religious exemptions, just like both the Amended Policy and the September 1 Policy. *See* ECF No. 76 at 16–17 (collecting cases). In the same vein, neither the Supreme Court nor the Tenth Circuit has struck down any COVID-19 vaccination mandate due to the lack of a religious exemption. *Id.* at 16. Plaintiffs don't attempt to argue otherwise.

Instead, Plaintiffs invite the Court to disregard all that, asserting that "[n]umerous federal courts have recently held that COVID-19 vaccine mandates likely violated the First Amendment as applied to religious objectors." ECF No. 81 at 19. The Court should reject this argument for several reasons. *First*, Plaintiffs primarily rely on out-of-circuit, unpublished district court cases that "lack the precedential weight necessary to clearly establish the law." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1306 (10th Cir. 2021); *accord Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018). *Second*, many of these cases post-date Defendants' challenged conduct and thus cannot show that the law "was clearly established *at the time of the challenged conduct*." *Walker v. Mohiuddin*, 947 F.3d 1244, 1248 n.3 (10th Cir. 2020) (emphasis added) (quotation omitted).

---

[6] It is unclear if the Amended Complaint asserts damages claims against the unnamed "Vaccine Verify" defendants in their individual capacities, but to the extent it does, the same qualified immunity analysis applies, consistent with Defendants' argument that the "individual Defendants are entitled to qualified immunity from Plaintiffs' individual-capacity claims." ECF No. 76 at 17.

*Third*, these cases involved markedly different circumstances and policies lacking the neutral and generally applicable nature of the Amended Policy.[7] *Finally*, the cases cited in Defendants' Motion confirm the propriety of the Amended Policy. ECF No. 76 at 16–17.

Plaintiffs also espouse various high-level First Amendment principles, for example, "[the] government cannot intentionally interfere with religious exercise in order to achieve a secular end." ECF No. 81 at 20. Lofty platitudes, however, do not rescue Plaintiffs' claims because the Court cannot "define clearly established law at a high level of generality" and must instead view the clearly established inquiry "in light of the specific context of the case, not as a broad general proposition." *Bishop v. Szuba*, 739 F. App'x 941, 944–45 (10th Cir. 2018) (quotation omitted). The general principles cited by Plaintiffs do not come close to establishing that *the particular conduct at issue*—enforcement of a neutral and generally applicable COVID-19 vaccination policy that denies religious exemptions to students generally and to employees where accommodation would pose an undue hardship—would have caused any reasonable official to understand that their conduct violated federal law.[8]

Finally, Plaintiffs reiterate their old argument that the Amended Policy treats "comparable secular activity more favorably than religious exercise." ECF No. 81 at 20 (quoting

---

[7] For example, in *Dahl v. Board of Trustees of Western Michigan University*, 15 F.4th 728 (6th Cir. 2021), the court addressed a university vaccination policy that applied only to student athletes and expressly provided for individualized exemptions. *Id.* at 733–34. And in *Magliulo v. Edward Via College of Osteopathic Medicine*, 2021 U.S. Dist. LEXIS 159265 (W.D. La. Aug. 17, 2021), the court emphasized that its analysis differed from prior vaccine-mandate cases because it was applying specific Louisiana statutes. *Id.* at *22.

[8] Oddly, Plaintiffs' cited cases actually undermine Plaintiffs' arguments. *See Shrum v. City of Coweta*, 449 F.3d 1132, 1143 (10th Cir. 2006) ("[T]he mere failure of a government employer to accommodate the religious needs of an employee, where the need for accommodation arises from a conflict with a neutral and generally applicable employment requirement, does not violate the Free Exercise Clause . . . ."); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993) ("[A] social harm may have been a legitimate concern of government for reasons quite apart from discrimination.").

*Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021)). This Court has already rejected Plaintiffs'

reliance on *Tandon*, correctly concluding that "the Court does not see how offering employees

the opportunity to request a religious accommodation could amount to treating comparable

secular activity more favorably than religious exercise." ECF No. 65 at 8–9. (In any event,

*Tandon* involved a COVID-related restriction on public gatherings, not a vaccination policy, and

so is distinguishable on that ground alone.) Nor are religious and medical exemptions

comparable, because requiring individuals with religious objections to get vaccinated furthers the

University's interest in protecting the health of its community whereas requiring medically

contraindicated vaccinations would undermine that interest. *See Doe v. San Diego Unified Sch.*

*Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021) (vaccine policy's medical exemption "does not

undermine the [government's] interests as a religious exemption would").[9] Accordingly, the

Amended Policy does not violate clearly established law and Plaintiffs fail to prove otherwise.

   **B.   The September 1 Policy did not violate clearly established law.**

   The qualified immunity arguments in Defendants' Motion applied universally to both

policies, showing that neither the Supreme Court nor the Tenth Circuit has ever held that any sort

of vaccination policy violated the First Amendment, entitling Defendants "to qualified immunity

from Plaintiffs' individual-capacity claims brought in Counts I, II, III, and IV." ECF No. 76 at

17. Moreover, it is not clear from the Amended Complaint that Plaintiffs brought *any* claims for

damages against Defendants in their individual capacities in connection with the September 1

Policy. The original complaint did not include any claims against Defendants in their individual

capacities, and the Amended Complaint added such claims without identifying which claims are

---

[9] Plaintiffs assert that "Defendants brazenly err[ed]" in describing recent Supreme Court denials
of injunctive relief, ECF No. 81 at 21 n.13, but this Court can decide for itself the import of those
decisions, which indisputably deny applications for injunctive relief. ECF No. 76 at 17, 19 n.8.

asserted against which Defendants, which claims are asserted against Defendants in their individual capacity versus their official capacity, which claims seek damages as opposed to equitable relief, or which requested relief relates to which challenged policy.

But even assuming Plaintiffs are permitted to sidestep their inadequate pleading in this regard, it would make no difference: Plaintiffs' September 1 Policy arguments fail for precisely the same reasons the Amended Policy arguments fail. Plaintiffs again espouse First Amendment principles at a sky-high level of generality and cite cases that have nothing to do with the particular conduct at issue here. Indeed, Plaintiffs reference the facts of only two cases, both out-of-circuit, and one was issued *after* Defendants promulgated and applied the September 1 Policy. *See Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021). In any event, one or two out-of-circuit cases are "insufficient to constitute the weight of authority from other circuits that is necessary to finding it clearly established that defendants' particular conduct violated [the plaintiff's] rights." *Routt v. Howry*, 835 F. App'x 379, 385 (10th Cir. 2020).

At bottom, Plaintiffs complain that the now-repealed September 1 Policy required Defendants to inquire into the sincerity of Plaintiffs' religious beliefs, but both the Tenth Circuit and the Supreme Court have deemed such an inquiry not just permissible, but appropriate and often necessary. *See, e.g.*, *United States v. Seeger*, 380 U.S. 163, 185 (1965) ("[W]hile the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.' This is the threshold question of sincerity which must be resolved in every case."); *United States v. Quaintance*, 608 F.3d 717, 721–23 (10th Cir. 2010) (deeming the sincerity of beliefs a question of fact and affirming a finding that plaintiffs' claimed beliefs were not sincere and religious in nature). Consistent with those principles, Defendants' actions under the September 1 Policy did not impermissibly intrude into the truth of Plaintiffs' religious beliefs or reject them,

but rather inquired as to whether the claimed beliefs were sincerely held. Thus, Defendants are also entitled to qualified immunity on all claims arising from the September 1 Policy to the extent those claims are even asserted in the Amended Complaint.

Ultimately, Plaintiffs fail to establish that *either* policy constituted a clearly established violation of the First Amendment. For the same reasons, Plaintiffs also fail to demonstrate a clearly established violation of the Equal Protection Clause. The individual Defendants are therefore entitled to qualified immunity on each of Plaintiffs' individual-capacity claims.

**IV.   Plaintiffs cannot state a plausible claim for relief under Rule 12(b)(6).**

    **A.   Plaintiffs' Free Exercise claim fails because the Amended Policy is neutral and generally applicable and satisfies rational basis review.**

In its Order denying Plaintiffs' renewed motion for a preliminary injunction, the Court correctly determined that the Amended Policy was neutral and generally applicable and that it survived rational basis review. ECF No. 65 at 6–12. Plaintiffs' Response again simply rehashes old arguments already rejected by the Court. The Court should reject them once again.

*First*, the Amended Policy is neutral both on its face and as applied to Plaintiffs. Plaintiffs' argument to the contrary—that the Amended Policy is not neutral because it allows students to seek medical exemptions but *not* religious exemptions—relies on a Ninth Circuit dissent and a "statement" from Justice Gorsuch in connection with an application for injunctive relief. ECF No. 81 at 23. Putting aside Plaintiffs' reliance on non-precedent, this response confuses an intentional infringement on religious practices with a refusal to accommodate religious needs in connection with a legitimate government interest. "[T]he mere existence of a secular exemption is not sufficient to establish a claim for a religious exemption," and therefore, here, does not render the Amended Policy non-neutral. *See, e.g.*, *Denver Bible Church*, 2022 U.S. App. LEXIS 1994, at *24.

Plaintiffs also argue that the Amended Policy's neutrality is subject to a heightened scrutiny trigged by "even slight suspicion . . . [of] animosity to religion." ECF No. 81 at 24 (quoting *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719, 1731 (2018)). This assertion is a sophistic attempt to bend a statement from *Masterpiece Cakeshop*, which really says that such a "suspicion" should cause government officials "to remember their own high duty to the Constitution." 138 S. Ct. at 1731. Plaintiffs' only claimed basis for such a suspicion is that Defendants replaced the September 1 Policy with the Amended Policy and later withdrew a previously granted medical exemption. Yet as this Court aptly recognized in denying Plaintiffs' renewed motion for a preliminary injunction, "the fact that the University amended its policy while navigating a monthslong global pandemic does not show that its reasons for denying religious exemptions for students are pretextual" or that Defendants implemented the Amended Policy "with the aim of suppressing religious belief, rather than protecting the health and safety of students, staff, and the community." ECF No. 65 at 8 (quoting *Doe*, 19 F.4th at 1177).

*Second*, the Amended Policy is generally applicable. Plaintiffs again complain that Defendants granted medical exemptions but not religious exemptions, relying on a Justice Gorsuch dissent from a "non-merits denial of emergency injunctive relief" as putative support for their argument. ECF No. 81 at 26. Plaintiffs ask the Court to reconsider its prior finding of general applicability, but nowhere do they explain how the Court got it wrong the first time. Nor do Plaintiffs refute Defendants' arguments (or the Court's prior findings) that students and employees are not comparable in this context and that medical exemptions further the University's interest in protecting health and safety while religious exemptions do not. *See, e.g.*, *Doe*, 19 F.4th at 1177–80 (rejecting arguments similar to Plaintiffs' as "fail[ing] to raise a

serious question as to whether the vaccination mandate is not neutral and generally applicable").

Plaintiffs also make faulty comparisons between themselves and (1) vaccinated staff and students who may be exposed to unvaccinated individuals off campus, (2) unvaccinated patients, and (3) vaccinated individuals who have not received booster shots. These comparisons fail because (1) vaccinated individuals working off campus are protected against COVID-19 and do not pose the same threat to the Anschutz community as unvaccinated individuals working or studying on campus, (2) Anschutz patients are not comparable to Anschutz employees or staff because their presence on-campus is more transient and because refusing medical care to the unvaccinated would undermine the University's interest in health and safety, and (3) Plaintiffs acknowledge that vaccinated but un-boosted individuals have at least some increased protection against COVID-19. ECF No. 81 at 26. In any event, none of these distinctions turn on religion or constitute unfavorable treatment of religious practices.

*Third*, because the Amended Policy is neutral and generally applicable, rational basis review applies, and the Court has already had "no trouble" finding that the Amended Policy has a rational basis. ECF No. 65 at 6 (citing similar cases). Plaintiffs suggest that the entire Amended Policy is "irrational" because three Plaintiffs work primarily off campus, because vaccinated students and employees are exposed to the unvaccinated off campus, and because the University does not currently have a booster mandate. But rational basis review does not require "mathematical nicety" because "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations -- illogical, it may be, and unscientific." *Heller v. Doe*, 509 U.S. 312, 321 (1993) (quotations omitted).

Plaintiffs rely on *Christian Heritage Academy v. Oklahoma Secondary School Activities Association*, 483 F.3d 1025 (10th Cir. 2007), but that case holds that a classification has a

rational basis so long as the government "'could rationally have decided' that its classification 'might foster' its purpose." *Id.* at 1033 (quotation omitted). Here, it is rational to believe that requiring vaccination for all Anschutz employees and students (especially those with patient treatment responsibilities) will foster community health and safety, that having a limited number of vaccinated individuals work at affiliate sites where they may be exposed to the unvaccinated is less a health risk than having numerous unvaccinated students and employees on campus, and that vaccinated but un-boosted individuals are less a health risk than the unvaccinated.

*Finally*, even if strict scrutiny applied, the Amended Policy would survive. The Court has already found that "Defendants have a compelling interest in ensuring that employees and students associated with Colorado's preeminent medical campus are vaccinated against Covid-19—for their patients' health and safety as well as their own." ECF No. 65 at 12. The Court is correct: "Stemming the spread of COVID-19 is unquestionably a compelling interest." *Doe v. Mills*, 16 F.4th 20, 32 (1st Cir. 2021) (quotation omitted). None of the cases Plaintiffs cite in arguing otherwise suggest that combatting a global pandemic is not a compelling interest.

The Court should also reject Plaintiffs' argument that the Amended Policy is somehow not narrowly tailored. The Amended Policy is narrowly tailored "because it requires vaccination only of those most likely to come into regular contact with those for whom the consequences of contracting COVID-19 are likely to be most severe." *Id.* at 33. Under the Amended Policy, those who can work remotely have been granted religious accommodations because doing so does not increase the risk to health and safety posed by the unvaccinated, and only those plaintiffs who cannot work remotely and who would pose an undue hardship by risking community health and safety are denied exemptions. This includes, for example, Jane Doe 1, who as a critical care doctor in a Pediatric Intensive Care Unit frequently comes into contact with critically ill children,

many of whom are not yet eligible for vaccination and are thus among the most COVID-19 susceptible patients. *See* Ex. 5 to Am. Compl. This satisfies the narrow tailoring requirement.[10] *See Mills*, 16 F.4th at 33.

For these reasons, Plaintiffs fail to state a Free Exercise claim based on either the Amended Policy or the September 1 Policy (to the extent the Amended Complaint can be read to assert that claim). Besides any claims under the September 1 Policy being moot, that policy was neutral because it applied to all Anschutz students and employees and was generally applicable as applied to Plaintiffs because it resulted in the denial of all religious accommodations. And like the Amended Policy, the September 1 Policy easily satisfies rational basis review (and would also satisfy strict scrutiny). The Court should dismiss Plaintiffs' Free Exercise claim.

### B.      Plaintiffs concede their Establishment Clause claim.

Plaintiffs lump their Free Exercise and Establishment Clause claims together, apparently believing these clauses duplicative and that the same analytical framework applies to both. Not so. The Tenth Circuit recently made clear that the sort of Establishment Clause claim Plaintiffs assert requires plausible allegations that the government coerced Plaintiffs "to support or participate in religion or its exercise." *Janny v. Gamez*, 8 F.4th 883, 904 (10th Cir. 2021) (quotation omitted). Defendants identified this standard in their Motion and explained how Plaintiffs had failed to satisfy it. ECF No. 76 at 24–25. Plaintiffs did not respond to that argument, assert any other Establishment Clause standard, or in any way explain how the Amended Complaint plausibly alleges sufficient facts to support an Establishment Clause claim.

---

[10] Plaintiffs again cite *Dahl*, 15 F.4th 728 (6th Cir. 2021), but that case deemed "fighting COVID-19" a compelling interest and involved a policy that resulted in the denial of *all* religious exemptions and applied only to students participating in team athletic activities. *Id.* at 735. Here, the Amended Policy applies to all Anschutz employees and students, and several Plaintiffs have received religious accommodations under the policy.

By failing to respond to Defendants' arguments, Plaintiffs have conceded them as a matter of law. *See, e.g.*, *Est. of Blodgett v. Correct Care Sols., LLC*, 2018 U.S. Dist. LEXIS 209535, at *22 (D. Colo. Dec. 12, 2018) ("Plaintiff does not respond to [an argument raised in a motion to dismiss], and so the Court deems it conceded."). The Court should dismiss this claim either as conceded or for the reasons stated in Defendants' Motion.

**C.**     **Plaintiffs fail to state an Equal Protection claim.**

Plaintiffs reference their Equal Protection claim in a single sentence in a footnote, ECF No. 81 at 29 n.17, leaving it to the Court to piece together how Plaintiffs' Free Exercise arguments relate to their Equal Protection claim. Plaintiffs do not respond to the Equal Protection arguments raised by Defendants, nor do Plaintiffs identify how they have been treated differently than others who are actually similarly situated. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (affirming dismissal where plaintiff failed to provide example of how it was treated differently than similarly situated entities). Plaintiffs also do not respond to any of the several cases Defendants cited in which other courts have rejected Equal Protection challenges to vaccination mandates. ECF No. 76 at 26. This Court need not undertake Plaintiffs' research or articulate their arguments for them. As with their Establishment Clause claim, Plaintiffs have conceded Defendants' Equal Protection arguments and the Court should dismiss this claim.

**D.**     **Plaintiffs fail to state a claim under the Colorado Constitution.**

Plaintiffs acknowledge that their claim under the Colorado Constitution is subject to the same analysis as their federal First Amendment claims. ECF No. 81 at 29 n.17. Because Plaintiffs' First Amendment claims fail for the reasons described above and in Defendants' Motion, the Colorado Constitution claim likewise fails.

17

**E.      Plaintiffs' ADA claim fails for lack of a perceived impairment.**

To start, Title II of the ADA only applies to a "public entity," so this claim cannot proceed against the individual Defendants. *See, e.g.*, *Phillips v. Tiona*, 2012 U.S. Dist. LEXIS 17236, at *3 (D. Colo. Feb. 13, 2012). Nor do Plaintiffs state a claim against the Board of Regents, because failure to obtain a vaccine is not a perceived physical impairment. ADA regulations provide that "[t]he definition of the term 'impairment' does not include physical characteristics . . . that are within 'normal' range and are not the result of a physiological disorder. The definition, likewise, does not include characteristic predisposition to illness or disease. Other conditions . . . that are not the result of a physiological disorder are also not impairments." 29 C.F.R. § 1630, app. 1630.2(h). Plaintiffs thus do not plausibly allege that the Board of Regents "mistakenly believe[d]" that Plaintiffs had any physical impairment or explain how "the absence of COVID-vaccination generated antibodies" would constitute such an impairment.[11] ECF No. 81 at 29–30. Rather, Plaintiffs merely allege that Defendants correctly perceived Plaintiffs as having "normal" immune systems that lack the additional protection afforded by COVID-19 vaccines.

Plaintiffs are also not entitled to protection under the ADA because they pose "a direct threat to the health or safety of other individuals in the workplace" due to their increased likelihood of spreading COVID-19. 42 U.S.C. § 12113(b). And because Plaintiffs' "essential job duties necessarily implicate the safety of others," Plaintiffs have the burden of showing that they

---

[11] Indeed, the EEOC has already deemed vaccination status to not implicate the existence of a disability: "When an employer asks employees whether they obtained a COVID-19 vaccination, the employer is not asking the employee a question that is likely to disclose the existence of a disability . . . . Therefore, requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA . . . ." EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at § K.9, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K.

can perform their job functions "without endangering others." *McKenzie v. Benton*, 388 F.3d

1342, 1354–55 (10th Cir. 2004) (quotation omitted). Plaintiffs cannot meet that burden because

they do not and cannot plausibly allege that unvaccinated employees and students pose no threat

to the health and safety of the Anschutz community. For these reasons, Plaintiffs' ADA claim

fails as a matter of law.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiffs'

Amended Complaint in its entirety.[12]

Respectfully submitted this 14th day of April 2022.

 /s/ Matthew J. Smith
Matthew J. Smith***
Gregory Goldberg***
Jessica J. Smith***
Holland & Hart, LLP
555 17th Street, Suite 3200
Denver, CO 80202
Tel: (303) 295-8000
mjsmith@hollandhart.com
ggoldberg@hollandhart.com
jjsmith@hollandhart.com

***Attorneys for Defendants Donald Elliman,
Shanta Zimmer, Eric Mediavilla, and Ann-Michael
Holland in their individual capacities

PHILIP J. WEISER
Attorney General

 /s/ Jacquelynn Rich Fredericks
JACQUELYNN RICH FREDERICKS*
First Assistant Attorney General
KATHLEEN SPALDING*

---

[12] Plaintiffs imply that their claims should not be dismissed because of their appeals currently
pending before the Tenth Circuit challenging the denial of their preliminary injunction motions.
ECF No. 81 at 21. But this Court has already denied Plaintiffs' Motion to Stay proceedings while
the appeals are pending. ECF No. 78.

Senior Assistant Attorney General
GRANT T. SULLIVAN*
Assistant Solicitor General
MEGAN PARIS RUNDLET*
Senior Assistant Solicitor General

Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Tel: (720) 508-6171
kit.spalding@coag.gov
jacquelynn.richfredericks@coag.gov
grant.sullivan@coag.gov
megan.rundlet@coag.gov

*Counsel of Record for Defendants Board of
Regents, and for Defendants Todd Saliman, Donald
Elliman, Shanta Zimmer, Eric Mediavilla, and Ann-
Michael Holland in their official capacities

 /s/ Hermine Kallman
HERMINE KALLMAN**
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
Tel: (303) 860-5691
hermine.kallman@cu.edu

**Counsel of Record for Defendants Board of
Regents, Todd Saliman, Donald Elliman, Shanta
Zimmer, Eric Mediavilla, and Ann-Michael Holland

## CERTIFICATE OF SERVICE

I certify that on April 14, 2022, I caused the foregoing motion to be electronically served

on the following parties via CM/ECF No.:

Joseph Brown
Theresa Sidebotham
Telios Law PLLC
P.O. Box 3488
19925 Monument Hill Road
Monument, CO 80132
jjb@telioslaw.com
tls@telioslaw.com

Michael McHale
Michael G. McHale, Attorney at Law
10506 Burt Circle, Suite 110
Omaha, NE 68114
mmchale@thomasmoresociety.org

Martin Whittaker
Peter Breen
Thomas More Society
309 W. Washington Street, Suite 1250
Chicago, IL 60606
privatrecht@gmail.com
pbreen@thomasmoresociety.org

_/s/ Matthew J. Smith_