IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 21-cv-02637-RM-KMT

JANE DOES 1-11, and
JOHN DOES 1, 3-7,

    Plaintiffs,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO,
TODD SALIMAN, President of the University of Colorado, in his official capacity,
DONALD M. ELLIMAN, Chancellor, University of Colorado Anschutz Medical Campus, in his official and personal capacities,
SHANTA ZIMMER, M.D., Senior Associate Dean of Medical Education, University of Colorado School of Medicine, in her official and personal capacities,
ERIC MEDIAVILLA, Associate Dean for Student Affairs, University of Colorado School of Dental Medicine, in his official and personal capacities,
ANN-MICHAEL HOLLAND, Master of Science Program Director, Department of Anesthesiology, in her official and personal capacities, and
JOHN AND JANE DOES 1-9, members of the Vaccine Verify team, in their official and personal capacities,

    Defendants.

_____

**ORDER**
_____

This civil rights action brought under 42 U.S.C. § 1983 is before the Court on

Defendants' Motion to Dismiss (ECF No. 76), which has been fully briefed (ECF Nos. 81, 84,

85, 86). The Motion is granted in part and denied in part for the reasons below.

**I.    BACKGROUND**

Plaintiffs are current and former employees and students of the University of Colorado

Anschutz Medical Campus who allege Defendants violated their rights by denying their requests

for religious exemptions from the University's Covid-19 vaccination requirement. The University's original vaccination policy became effective on September 1, 2021. The policy contemplated religious exemptions for both employees and students, providing that "[a] religious exemption may be submitted based on a person's religious belief whose teachings are opposed to all immunizations." (ECF No. 1-1 at 3.) The policy also contemplated a medical exemption for employees and students "if vaccination is medically contraindicated due to other medical conditions or due to a physical condition that would cause vaccination to endanger the individual's life or health." (*Id.*) The policy further provided that "[i]ndividuals who are not vaccinated and do not have an approved medical or religious exemption[] will not be allowed to access University facilities or programs in person." (*Id.* at 4.)

Each Plaintiff requested and was denied a religious exemption under the original policy. (ECF No. 30, ¶ 55.) In response to her request for an exemption, Jane Doe 2, a licensed physician, received an email from the "Vaccine Verify" team asking her to explain her sincerely held religious belief and to state whether she had received influenza or other vaccines. (ECF No. 30, ¶¶ 17, 75, 76, 77.) She complied with the request, but days later received another email stating that her exemption request was denied. (Id. at ¶ 78.) She was then informed that "she would either be officially fired as of September 25 or, alternatively, could avoid potential difficulties with continuing licensure if she submitted a letter of 'resignation' before then characterizing her involuntary separation as a 'resignation' rather than a 'termination'" (*id.* at ¶ 79), which is what she did.

The University amended its vaccination policy on September 24. Under the amended policy, medial accommodations are still available to both employees and students, but religious

accommodations are no longer available to students. The amended policy provides that "[a] religious accommodation may be granted based on an employee's religious beliefs." (ECF No. 15-11 at 4.) The policy further provides that "[a] religious accommodation will not be granted if the accommodation would unduly burden the health and safety of other Individuals, patients, or the campus community." (*Id.*) Similarly, medical accommodations—for both employees and students—are subject to the condition that they do not "pose[] a direct threat to the health or safety of the Individual or others." (*Id.* at 3-4.)

The two original Plaintiffs were unaware of the amended policy when they filed their Verified Complaint five days after it went into effect. The Court denied these Plaintiffs' request for a preliminary injunction enjoining enforcement of the original policy on mootness grounds. And it denied a preliminary injunction as to the amended policy because the Verified Complaint did not state any claim based on that policy.

Less than a week later, the Court granted Plaintiffs' unopposed motion to file their Verified Amended and Supplemental Complaint, which added sixteen new Plaintiffs to the case as well as some new Defendants. Plaintiff John Doe 2 has since voluntarily dismissed his claims without prejudice, leaving seventeen Plaintiffs: thirteen current or former employees and four current or former students. Plaintiffs assert claims under the Free Exercise and Establishment Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), and the religious freedom clauses of the Colorado constitution.

In November 2021, Plaintiffs filed a renewed motion for preliminary injunction based on the allegations in the Verified Amended and Supplemental Complaint. In their response to the

3

renewed motion, Defendants asserted that, with the exceptions of Jane Does 2 and 9, who had since resigned and been terminated, respectively (*see* ECF No. 56 at 8 n.18), each of the employee Plaintiffs' requests for religious accommodation was reconsidered under the amended policy.  In December 2021, these Plaintiffs received letters explaining how their exemption requests were evaluated.  Accommodations were approved for several of them—Jane Does 4, 5, and 6 and John Does 3, 4, 5, and 7—because it was determined they could perform their job duties remotely or in person while isolating.  Though they continued to work the same hours and have the same duties, Jane Doe 5's and John Doe 4's compensation was reduced by ten percent. (ECF No. 30, ¶¶ 20, 30.)

      The Court again denied injunctive relief, finding that enjoining Defendants from enforcing the original policy would have no effect in the real world.  With respect to the amended policy, the Court concluded Plaintiffs had not shown a likelihood of success on the merits because the policy is neutral on its face and as applied to Plaintiffs, generally applicable, and rationally related to the goal of protecting public health.  Nor had Plaintiffs shown a clear and unequivocal right to relief under the other injunctive relief factors.

      Defendants now seek dismissal of all the claims against them, arguing that some of Plaintiffs' claims have become moot and that they are otherwise barred by the Eleventh Amendment or the doctrine of qualified immunity.  They also argue Plaintiffs have failed to state a claim under the federal or Colorado constitutions or the ADA.

## II.   LEGAL STANDARDS

### A.   Mootness

This Court lacks subject-matter jurisdiction over matters that are moot.  *See Rio Grande*

*Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). The doctrine of standing generally requires assessing whether a plaintiff's personal interest in a dispute exists at the outset; "the doctrine of mootness considers whether it exists throughout the proceedings." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). An action becomes moot if intervening circumstances deprive the plaintiff of a personal stake in the dispute—the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 957-58 (10th Cir. 2021). The Court assesses mootness as to each form of relief sought. *Id.* at 958.

### B. Sovereign Immunity

Under the Eleventh Amendment, the states generally enjoy sovereign immunity from suit. *See id.* at 965. This immunity extends to suits against state officials in their official capacities. *Id.* However, "[u]nder the *Ex parte Young* exception, a plaintiff may sue individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks only prospective relief." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 159-60 (1908)). The exception applies where the state official has a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. *Id.*

### C. Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018); *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to

a more challenging standard of review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *See Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Id.* (quotation omitted).

### D. Failure to State a Claim

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). To defeat a motion to dismiss, the complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

### III. ANALYSIS

Although this matter is before the Court on a Motion to Dismiss, in light of significant developments in this case, the Court has exercised its discretion to consider certain documents

outside of the Complaint without converting the motion to a motion for summary judgment.[1] These include both the original policy (ECF No. 1-1) and the amended policy (ECF No. 15-11) as well as the letters received by Jane Does 1, 3, 4, 5, 6, 10, and 11 and John Does 3, 4, 5, and 7 in December 2021 (ECF Nos. 56-3, 56-4, 56-5, 56-6, 56-7, 56-8, 56-9, 56-10, 56-11, 56-12, 56-13), in which the University explained how it reconsidered their exemption requests under the amended policy.

In addition, Plaintiffs' have filed a Motion for Leave to File a Surreply, with the proposed filing attached. (ECF Nos. 85, 85-1.) Defendants have filed a Response to the Motion. (ECF No. 86.) The Court grants Plaintiffs' Motion and considers these filings as well.

A. **Mootness**

Defendants first argue the claims for equitable relief by Jane Does 4 and 6 and John Does 3, 4, 5, and 7 have become moot because they have received religious accommodations. However, these Plaintiffs are not alleged to have been wholly exempted from the amended policy, and they assert they are entitled to "*equal* treatment with secular exemptees." (ECF No. 81 at 7.) Although they have been permitted to perform their jobs remotely, two of them had their compensation docked. Consequently, they are not in the same position as they were when the University implemented the original policy. Therefore, the injunction they seek could have some effect in the real world, and the Court does not find that their claims for injunctive and declaratory relief have become moot.

Defendants also argue Jane Doe 7's equitable claims are moot because she has since been

---

[1] On a motion to dismiss, a court may consider documents outside the complaint if they are central to the plaintiff's claim and referred to in the complaint and the parties do not dispute their authenticity. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). Or a court may consider such documents to show their contents but not to prove the truth of matters asserted in them. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

vaccinated. In response, Plaintiffs argue only that she could once again be subject to the amended policy if the University introduced a booster requirement in the future. The Court finds her claims asserted in the Complaint are now moot, and any claims she might asserted in the future are premature and unripe at this stage.

Defendants next argue the claims by Jane Doe 2 are moot because she resigned from her position with the University. However, the factual allegations concerning the circumstances of her resignation indicate she did not do so voluntarily. And, unlike the Plaintiffs whose exemption requests were reevaluated under the amended policy, the University did not reevaluate Jane Doe 2's request because she had already left. Under these circumstances, Jane Doe 2 could have had a claim for monetary damages stemming from the University's application of the original policy to her. But, as the Court concludes below, Plaintiffs have not shown such damages are available in any event. Moreover, as the Court further concludes in this Order, any claims for equitable relief premised on the original policy are now moot. Thus, in the absence of allegations showing a plausible right to relief, the Court finds Jane Doe 2's claims are moot.[2]

Defendants also argue the claims by John Doe 6 are moot because he withdrew from the anesthesiology master's program. (ECF No. 76 at 10.) Based on the rulings contained in this Order, however, John Doe 6 has not shown he has a plausible right to relief. Most of the relief Plaintiffs seek is barred by Defendants' sovereign and qualified immunity, and any equitable relief would have to be premised on the amended policy, which unequivocally bars religious

---

[2] The Court declines to infer Plaintiffs have stated a plausible claim for monetary damages on the basis that they have sued Defendants John and Jane Does 1-9 in their personal and official capacities. These Defendants have not been served or even identified. For present purposes, the Court finds the speculative possibility that these Defendants could be personally liable to Plaintiffs for their conduct is not enough to show a right to relief that is plausible.

accommodations for students.  Therefore, the Court finds his claims have become moot as well.

Finally, Defendants also argue Plaintiffs' claims for equitable relief arising from the original policy are moot.  "[I]n general, the repeal of a challenged statute is one of those events that makes it absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur."  *Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004) (quotation omitted).  Given the absence of any allegations or circumstances suggesting the original policy will be reinstated, the Court agrees.

### B.      Sovereign Immunity

#### 1.      Claims Against Defendant Board of Regents

Plaintiffs concede Defendant Board of Regents "is generally immune under the Eleventh Amendment from [their] First Amendment claims" (ECF No. 81 at 10) and raise no argument with respect to their other constitutional claims.  Instead, they argue that the ADA abrogates sovereign immunity in the context of this case.  As discussed below, Plaintiffs have failed to state an ADA claim in their Complaint.  Therefore, the Court finds Plaintiffs' claims against Defendant Board of Regents are barred by sovereign immunity.

#### 2.      Claims Against Individual Defendants in their Official Capacities

Plaintiffs also concede that "the Eleventh Amendment prevents them from seeking damages against Defendants sued in the official capacities (on their First Amendment claims)" (ECF No. 81 at 11) and, as with their previous argument, fail to raise any argument with respect to their other constitutional claims.  Accordingly, the Court finds Plaintiffs are not entitled to monetary damages based on their claims against the individual named Defendants in their official capacities.

Moreover, Plaintiffs assertion that their claims for equitable relief against Defendant Saliman, who is sued solely in his official capacity, satisfies the *Ex parte Young* exception lacks merit. The amended policy indicates that it was approved by Defendant Elliman and is to be enforced by the "Executive Vice Chancellor for Administration and Finance." (ECF No. 15-11 at 1.) The Complaint is devoid of allegations establishing that Defendant Saliman had a particular duty to enforce either the original policy or the amended policy, or that he demonstrated his willingness to exercise such duty. *See Hendrickson*, 992 F.3d at 965. Accordingly, Plaintiffs' claims against Defendant Saliman are also barred by sovereign immunity.

### C.     Qualified Immunity

The individual named Defendants sued in their personal capacities assert they are entitled to qualified immunity as to the federal claims asserted against them. For purposes of qualified immunity, a right is clearly established if its contours are sufficiently clear that reasonable officials would understand that what they are doing violates that right. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Given the unprecedented nature and global scope of the Covid-19 pandemic as well as its devastating impacts, the Court finds the allegations in the Complaint do not establish that these Defendants acted unreasonably in light of existing precedent and in the specific context of this case. Therefore, at a minimum, they did not violate Plaintiffs' clearly established rights.

####     1.     Free Exercise Clause

With respect to Plaintiffs' free exercise claim, Plaintiffs have identified no authority for the proposition that a vaccination mandate violates the First Amendment if it lacks a religious

exception. Courts that have reached the issue since this case was filed have reached the opposite conclusion. *See, e.g.*, *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021) ("Limitation of the medical exemption in this way serves the primary interest for imposing the mandate—protecting student 'health and safety'—and so does not undermine the District's interests as a religious exemption would."); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 282 (2d Cir. 2021) ("The absence of a religious exception to a law does not, on its own, establish non-neutrality such that a religious exception is constitutionally required."); *see also Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 651 (10th Cir. 2006) ("*Grace United*") (rejecting the proposition that a secular exemption automatically creates a claim for a religious exemption).

Nor would existing precedent have placed these Defendants on notice that they were violating Plaintiffs' rights by enforcing the University's vaccination policies. Afterall, the Free Exercise Clause does not prohibit state officials from validly regulating conduct which may be deemed religious. *See Grace United Methodist Church*, 451 F.3d at 649. "Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief." *Id.*

For the reasons stated in its Order denying injunctive relief, the Court has little trouble concluding that the amended policy is neutral on its face and as applied to Plaintiffs. (*See* ECF No. 65 at 7-9.) The fact that it includes a religious exemption for employees but not for students does not make it not generally applicable because the risks posed employees and students are not equivalent. *See* Doe, 19 F.4th at 1178-80. The Court further concludes that the policy easily satisfies rational basis review, which requires the University to have chosen a means for

addressing a legitimate goal that is rationally related to achieving that goal. *See Kane v. De Blasio*, 19 F.4th 152, 166 (2nd Cir. 2021); *We The Patriots*, 17 F.4th at 290 ("The Vaccine Mandate plainly satisfies this [rational basis] standard."). Plaintiffs' allegations fall well short of establishing that enforcing the amended policy would have appeared unlawful to a reasonable official.

The original policy presents a closer question, but the Court is still not persuaded that it would have been sufficiently clear to Defendants that enforcing that policy would violate Plaintiffs' clearly established rights. Plaintiffs have not pointed to any Supreme Court or Tenth Circuit authority holding that the First Amendment was ever violated by any vaccination policy. The original policy did not discriminate against or give preference to any specific religion or denomination. And Plaintiffs have not shown that inquiring by email as to the basis for an individual's request for a religious exemption rises to the level of making "intrusive judgments regarding contested questions of religious belief or practice" or "trolling through a person's or institution's religious beliefs," as did the conduct in *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1261 (10th Cir. 2008). Nor do Plaintiffs allegations rise to the level of the direct, intentional infringement on religious exercise that precluded a finding of qualified immunity in *Shrum v. City of Coweta*, 449 F.3d 1132, 1144-45 (10th Cir. 2006). Accordingly, the Court finds Defendants are entitled to qualified immunity with respect to their roles in enforcing the original policy.

    2.    <u>Establishment and Equal Protection Clauses</u>

Plaintiffs do not raise any separate arguments with respect to these Defendants' entitlement to qualified immunity on Plaintiffs' claims based on the Establishment and Equal

Protection Clauses.  Plaintiffs fail to address Defendants' contention that none of their conduct rises to the level of coercion required to state an establishment claim.  Nor do Plaintiffs make any meaningful showing that they are similarly situated to individuals who receive medical exemptions.  *See Doe*, 19 F.4th at 1178 (finding that granting religious exemptions could pose a significant barrier to effective disease prevention compared to the risks posed by a small set of objectively defined and largely time-limited medical exemptions).  Further, "[w]hen a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review." *Does 1-6 v. Mills*, 16 F.4th 20, 35 (1st Cir. 2021).  Therefore, the Court finds these Defendants are entitled to qualified immunity on these claims as well.

   3. <u>ADA</u>

  To establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that she (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability.  *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011).  An individual is considered disabled under the ADA if she has "a physical or mental impairment that substantially limits one or more major life activities," has "a record of such an impairment," or is "regarded as having such an impairment."  42 U.S.C. § 12102(1).  An individual meets the third requirement if she establishes that she has been subject to discrimination "because of an actual or perceived physical impairment."  § 12102(3)(A).  To show "discrimination," the plaintiff must establish that she has suffered an adverse employment action *because of* her disability.  *C.R. England*, 644 F.3d at 1038.

Plaintiffs' ADA claim is premised on the novel legal theory that they are "disabled" because they are regarded as having a disability due to their "absence of Covid-vaccination generated antibodies." (ECF No. 30, ¶ 253.) Plaintiffs do not cite, nor is the Court aware of, any authority that might have placed Defendants on notice that enforcing the vaccination policies could violate Plaintiffs' rights under the ADA, or that such a claim is viable under the ADA. Nor does the Complaint contain non-conclusory allegations that Plaintiffs were regarded has having a disability or that they suffered any adverse employment action because of such disability. Accordingly, the Court finds that these Defendants did not violate Plaintiffs' clearly established rights. The Court further finds that Plaintiffs are entitled to qualified immunity because Plaintiffs have failed to plead an underlying violation of the ADA.

### D.     Failure to State a Claim

In their Motion, Defendants assert that all of Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(6). As stated above, the Court agrees that Plaintiffs have failed to state a claim with respect to their ADA claim. Given that this Order has substantially withered down the claims in this case, however, the Court finds it would be better the address the merits of the remaining claims at the summary judgment stage. It remains to be seen whether there are genuine issues of material fact regarding the remaining Plaintiffs' claims to the extent they seek equitable relief from the named individual Defendants (except for Defendant Saliman) in their official capacities premised on the amended policy or any other relief from Defendants John and Jane Does 1-9. These are, however, the only claims that remain or potentially remain in this action.

## IV. CONCLUSION

Therefore, the Motion (ECF No. 76) is GRANTED IN PART and DENIED IN PART, as set forth in this Order:

(1)  the claims brought by Plaintiffs Jane Does 2 and 7 and John Doe 6 are DISMISSED WITHOUT PREJUDICE;

(2)  the claims against Defendants Board of Regents and Saliman are DISMISSED WITHOUT PREJUDICE;

(3)  the claims against the other named Defendants in their personal capacities are DISMISSED WITH PREJUDICE;

(4)  Plaintiffs' ADA claims are DISMISSED WITH PREJUDICE; and

(5)  Plaintiffs' Motion for Leave to File Surreply (ECF No. 85) is GRANTED

DATED this 29th day of September, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge